198 So.2d 613

**Tommy Howard EMERSON**

v.

**STATE.**

**8 Div. 248.**

Supreme Court of Alabama.

April 13, 1967.

Ralph E. Slate, Decatur, for appellant.

MacDonald Gallion, Atty. Gen., and Robt. F. Miller, Asst. Atty. Gen., for the State.

HARWOOD, Justice.

This appellant has been adjudged guilty of murder in the second degree and sentenced to imprisonment in the penitentiary for forty years.

The evidence presented by the state tended to show that on the morning of 2 March 1965, the body of Rosa Emerson was found lying in a ditch off a public highway in Morgan County. Medical evidence was to the effect that she died of a brain injury caused by a blow to the head.

T. A. Patterson, chief deputy sheriff of Morgan County, testified that the investigation of Rosa Emerson's death was assigned to Donald Hobby, who was then connected with the sheriff's office, but who prior to the trial of this case left the sheriff's office and is now in Atlanta.

On the second or third of March 1965, the appellant who had been arrested in connection with the death of his wife, was brought into the sheriff's office and there, in the presence of Patterson and Bennie McEntire, he was interrogated by Hobby who typed out his statement as appellant talked. It was Patterson's recollection that upon the completion of the interrogation, the appellant read over the statement and signed it. Patterson and McEntire then signed the statement as witnesses.

The statement is confessory in nature to the extent that it alleges that after the

appellant and deceased returned to their home about 10 P.M., on the night of 1 March 1965, they got to fussing "then Rosa came out and I got into the car and we went down the road. Then we got to fussing and we started to fighting. I knocked her down three times with my fist. I then left her lying down in the ditch. This happened about 10 P.M., approximately 100 yards east of Cain's Landing crossing."

Prior to offering the above statement in evidence, the predicate for its introduction was laid as follows:

"Q. I will ask you if on the occasion if Hobby or anybody else in your presence or hearing offered him any reward or hope of reward or inducement or anything to get him to make a statement?

"A. They did not."

At this point Mr. Patterson was taken on voir dire examination by the defense counsel. During this examination, Patterson testified that the appellant was brought to the sheriff's office in the daytime. He did not have a lawyer present with him. Hobby would ask the appellant a question and then type up his answer. The whole thing did not last as long as twenty minutes.

Patterson further testified that he was present during the entire time and did not recall Hobby changing typewriters or ribbon on the typewriter.

No questions were addressed to Patterson seeking to elicit testimony as to any mistreatment of the accused or threats made toward him.

At the conclusion of this voir dire examination, the alleged statement by the appellant was offered in evidence, at which time the defense counsel interposed an objection in the following language:

"Now, we strenuously and strongly object to it, it isn't dated; we respectfully call the court's attention not to the words, but to the make-up of the two typewritten lines as to the rest of it.

"THE COURT: Let me see it. (The document was handed to the court.) I don't know that that * * * overruled."

The state also introduced two witnesses whose testimony was directed toward showing prior difficulties between the appellant and his wife. In this connection Arthur Gill testified that about a year prior to the wife's death, he had been washing his car at a well close to the home of the appellant and the deceased. At this time he heard hollering and screaming in the house and the appellant and the deceased emerged from the house with her head under his arm. Blood was coming from the deceased's mouth.

Effie Mae Nance testified that about two years prior to the wife's death she saw them in a fight. They were right beside her car. Over the appellant's objection the witness was permitted to testify that at this time the appellant had a hammer and hit his wife in the face with the hammer and knocked her down.

The appellant's evidence tended to show that there had been virtually no difficulties between the appellant and his deceased wife at any time. In his own behalf the appellant testified that the deceased left their home about 8:30 on the night of 1 March 1965, and he went to bed and to sleep. During the night he heard dogs barking and looking out of his window he saw his car parked. He did not see his wife come into the house at this time and he immediately went back to sleep. When he awakened the next morning about 5:30, he found his wife was still absent so he dressed and commenced hunting for her, going to the homes of about five people in this effort. Not finding her at any of these places, he went on to his work. The appellant's evidence also tended to show that the deceased sometimes spent the night away from home.

The appellant denied strenuously that he had ever been interviewed by Hobby in the presence of Patterson and McEntire or that he had ever signed the statement introduced in the evidence by the state. He

testified that when he was arrested at his work no questions were asked him by the officers on the ride back to the jail; that in jail Mr. Hobby did ask him what he knew about his wife's death and he had replied that he did not know anything about it, and would like to see whoever did it brought to justice.

During the cross examination of the appellant, he was questioned as to whether on the day he was released from jail on bond, about a week after his wife's death, if he had gone out into his garden and dug up a pair of shoes and later burned them. The appellant denied all such matters.

In rebuttal to this testimony, Robert Gill testified that on the Sunday morning that the appellant was released from jail on bond, he, Gill, had gone to a church next to the appellant's home. No one else showed up at the church and he was sitting there reading his bible when he heard an automobile drive up to the appellant's home. Opening the church door about six inches, he saw the appellant go to his garden and with his hands dig up a pair of shoes which he took with him into his house.

Counsel for appellant argues that the court erred in admitting appellant's confession into evidence in that the predicate as laid by the solicitor failed to show that no threats or abuse were exercised toward appellant to get him to make the statement.

The predicate of voluntariness is ineptly phrased in the District Attorney's question. While in a broad sense the word "inducement" would include threats or fear, it is clear under our decisions that this court has treated the word "inducement" in confession predicates as meaning reward, or hope of reward. Bonner v. State, 55 Ala. 242; Stewart v. State, 231 Ala. 594, 165 So. 840; Logan v. State, 251 Ala. 441, 37 So.2d 753.

█ Prima facie a confession is presumed to be involuntary, and there must be evidence addressed to the trial judge suffi-cient to rebut this presumption and showing that the confession was made without the influence of either hope or of fear, *unless the attending circumstances affirmatively disclose the voluntariness of the confession.* Rudolph v. State, 275 Ala. 115, 152 So.2d 662, cert. den. 84 S.Ct. 155, 375 U.S. 889, 11 L.Ed.2d 119; Duncan v. State, 278 Ala. 145, 176 So.2d 840.

There is nothing in this record tending in anywise to show that this confession was the product of repeated or prolonged questioning, or anything indicating duress. Patterson testified that the whole interview was less than twenty or thirty minutes.

Patterson was examined at some length on voir dire, and at no time did defense counsel pose any question seeking to elicit evidence that duress may have been used to obtain the confession.

After the voir dire, defense counsel interposed an objection to the admission of the confession, but only upon the ground that the same was not dated, at the same time calling the court's attention "to the make-up of the two typewritten lines as to the rest of it." Had counsel not intended to waive any ground that the confession was induced by fear, and called the court's attention to the alleged defect in the predicate by appropriate ground, the matter could readily have been determined.

While denying that he made or signed any confession, the appellant himself testified that at one time during the early part of his incarceration, he had told Abbott that he did not kill his wife, and wanted to see the guilty party brought to justice. At no time during his testimony did the appellant intimate that he had in anywise been mistreated by any officer having him in custody.

█ We hold that all of the circumstances attending the taking of this confession are sufficient to establish its voluntariness despite the technically defective predicate as laid by the State Attorney.

As stated by Judge McElroy in his work on the *Law of Evidence in Alabama,* 2nd Ed., Vol. II, Sec. 200.13(5), p. 109:

"A formal predicate is not necessary (though as a matter of caution it is always advisable) when the circumstances testified to, 'affirmatively show' no improper inducements, that is, when the circumstances indicate pretty clearly that, according to the common probabilities of experience, the confession was not improperly induced."

Further, in determining whether a statement by an accused is voluntary, a trial court is vested with a large discretion, and his conclusions in the premise will not be disturbed unless palpably wrong. Reeves v. State, 260 Ala. 66, 68 So.2d 14; Fewell v. State, 259 Ala. 401, 66 So.2d 771.

Counsel for appellant further contends that the lower court erred in permitting, over defense objections, too much detailing of the former difficulties testified to by witnesses for the state.

In Wright v. State, 279 Ala. 543, 188 So.2d 272, we wrote:

"As observed by Judge McElroy in his work on evidence (The Law of Evidence in Alabama, 2d Ed. Sec. 45.06(5)), the rule enunciated in McAnally v. State, 74 Ala. 9, to the effect that the gravity or lack of gravity of a former difficulty may be proven but that its merits or particulars cannot be shown nor can it be shown who was at fault in the former difficulty, present a rule difficult to administer and to comply with. As stated in Dodd v. State, 32 Ala.App. 504, 27 So.2d 259:

'The demarcation between the fact, or highlights, of a former difficulty, and its details, is indeed a tenuous and vague division. A measure of discretion should and must be allowed the trial judge in determining the extent of detailing necessary to picture and constitute the fact. Brothers v. State, 236 Ala. 448, 183 So. 433.'

"To the same effect see Spain v. State, 37 Ala.App. 311, 68 So.2d 53; Mahaley v. State, 36 Ala.App. 89, 53 So. 2d 594.

"We will not here attempt to review or reconcile the very large number of our cases and those of the Court of Appeals pertaining to whether the facts shown did or did not constitute an excess of detailing, but refer those interested to Judge McElroy's very detailed discussion of these cases to be found in his work above referred to in Section 45.06 et seq."

We are unwilling to hold, in the instances now being considered, that the trial court abused its discretion in the premises.

It is further argued that error resulted from the action of the court in permitting the witness, Robert Gill, to testify in rebuttal, over defense objections, as to seeing the appellant dig up the shoes in his garden on the Sunday appellant was released from custody on bail. It is counsel's contention that this evidence should have been presented by the state on its case in chief. Being in rebuttal to appellant's testimony on cross examination in which he denied he had dug up anything on that day, the evidence was clearly admissible in rebuttal to contradict the appellant in this aspect.

Further, it is within the discretion of the trial court to allow evidence in rebuttal which might have been presented in chief. Southern Ry. Co. v. Wilson, 138 Ala. 510, 35 So. 561; Terry v. Williams, 148 Ala. 468, 41 So. 804.

Lastly, counsel for appellant contends that error resulted from the action of the court in overruling an objection to a statement made to the jury by the District Attorney during his argument to the jury. In this regard the record shows the following:

"MR. SLATE: * * * I object to the statement by the solicitor that this defendant has been out of jail on bond since the 14th day of August and further stating,

'I can't help but think about that young wife stomped to death on the side of the road and if it was me and I was under suspicion and thought I was innocent, I would have used every facility—' and at that point I objected. \* \* \*"

The court thereupon instructed the jury that the appellant might show the offense had been committed by some other person, but was not obligated to do so, and any efforts of appellant along that line probably would not be admissible, that arguments are to help the jury and are not to infer something the evidence does not show. The court then overruled the objection.

 There was testimony from the appellant that he had been out on bond since the 14th of August. This portion of the District Attorney's argument was therefore permissible. The only possible objectionable portion of the argument was, "I would have used every facility—" At this point the argument was interrupted by the objection. Resort to speculation would have to be indulged to complete the meaning of the interrupted and fragmentary statement. Part of the argument to which the objection was interposed being permissible and material, and the objection not separating the material portion from what counsel contends was improper, i. e., "I would have used every facility—", the objection was overruled without error. Carmichael v. State, 197 Ala. 185, 72 So. 405; Kelley v. State, 32 Ala.App. 408, 26 So.2d 633. Particularly is this true in light of the court's instructions to the jury.

In brief counsel for appellant has requested that we "cause States Exhibit No. 5, the alleged confession, together with all of defendant's exhibits showing the handwriting of the defendant, to be forwarded to this court for actual comparison by the court on the contention of the defendant that he did not sign the alleged confession, and for further contention of the defendant that the confession itself \* \* \* shows that it was written on different typewriters, or different ribbons."

We have not granted this request, it being our view that these matters go to the credibility of the confession, a matter passed on by the jury with these exhibits before it, after the court had determined that the confession had not been improperly induced.

We also wish to note that this trial was had and judgment entered on 14 February 1966. The requirements of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 as to interrogation of persons charged with crime are therefore without application to this review. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.