280 So.2d 171

**Danzler McNAIR, Jr., alias**

v.

**STATE.**

**3 Div. 159.**

Court of Criminal Appeals of Alabama.

May 15, 1973.

Rehearing Denied June 12, 1973.

Jerry L. Cruse, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

JOSEPH A. COLQUITT, Circuit Judge.

Appellant was convicted of murder in the first degree and sentenced to life imprisonment.

The state's evidence tended to show that at approximately 2:00 o'clock, A.M., on October 8, 1970, the appellant entered the Montgomery Truck Stop on U. S. 231 for gas and transmission fluid. He was driving a 1963 Oldsmobile with Michigan license plates. McNair purchased six dollars worth of gasoline and some transmis-

sion fluid. He then informed the attendant that he did not have any money. He told the attendant that he was from Saginaw, Michigan, but was visiting in Montgomery. However, the address he gave was known by the attendant to be non-existent.

The attendant told McNair that he was going to siphon the gasoline from the automobile. Appellant then walked out to his car and drove away. After observing appellant's direction of departure, the attendant telephoned the Montgomery County Sheriff's Department, reported the incident, and informed them of the license number of the automobile.

In approximately twenty to thirty minutes, McNair returned to the truck stop and handed the attendant two five-dollar bills. The attendant gave appellant his change, and McNair departed. The attendant again telephoned the Sheriff's office and reported the payment. About ten minutes later someone from the Sheriff's office called the attendant and asked for a description of appellant, and he gave the requested information to the caller.

Just after three o'clock of the same morning, one Robert Hill entered the Oil Well service station on U. S. 231 some seven or eight miles from the Montgomery Truck Stop. The station attendant was found lying on the floor with an open wound to the side of his head. He was alive at that time. Hill called the police. Sheriff's deputies and Montgomery city police responded to the call. An examination of the scene by the police produced a spent .25 caliber casing. No bullet holes were found in the building.

The attendant was identified as Flaviano H. Covarrubias. His wife testified he was the night attendant at the Oil Well, and that he left for work on the night of October 7, 1970, at 10:15 P.M. Covarrubias died during the night of October 7–8, 1970. A post-mortem examination revealed that he died as the result of shock, hemorrhage and trauma to the brain caused by a gunshot wound to the head. A .25 caliber metal-jacketed bullet was removed from the skull of the deceased.

A twenty-five caliber automatic owned by the appellant's mother was ultimately given to the police. She had noticed her weapon was missing from her purse during the evening of October 7, 1970. The next morning she found the gun in appellant's coat pocket. A scientific examination indicated that this was the weapon which fired the fatal shot and ejected the spent casing found at the Oil Well service station.

On October 8, 1970, the appellant was arrested at his mother's home in Troy by a local detective. At that time he was "patted down", taken into custody, given the Miranda warning, and removed to the Troy City Jail. A "station-house" search of appellant produced a .25 caliber, metal-cased cartridge, sixty-one dollars in currency, and change amounting to $4.79.

That afternoon appellant again was given the Miranda warning by members of the Montgomery Police Department, and returned to Montgomery. At the police station appellant read a Miranda warning card, was read a waiver form, signed the waiver, and then gave an oral statement to Detective Ward of the Montgomery Police Department. They were alone when the statement was given. This statement was transcribed and typed. After appellant corrected a misspelled name he signed the confession in the presence of two police officers, and wrote, "I left the gun in my colt (sic) pocket at my house." Then he again signed the statement.

Appellant testified that he stopped at a gas station on the Troy highway at approximately 7:30 o'clock on the evening of October 7, 1970. While there, the attendant put oil in the transmission of his automobile, and an altercation between appellant and the attendant ensued. He drove away to test the transmission, then returned to the station and paid for the gas and oil. He then drove to Troy. He denied any connection with the crime. He

stated he did not know of the accusation against him until after he signed the statement.

McNair further testified that the interrogating officer struck him several times with a club, then pulled a pistol and threatened, "if I didn't sign the statement that he was going to beat the hell out of me." In addition, he stated he requested an attorney and was told, "(you) don't get no damn lawyer before (you) go to court." He testified that he had never seen the pistol prior to trial.

Appellant's mother testified she saw McNair at the jail on October 8, 1970. At that time he was crying and his face was swollen. He appeared to be frightened.

Appellant first contends that his arrest was unlawful, therefore, the search of his person and seizure of the money and cartridge were illegal. Title 15, Sec. 155, Code of Alabama 1940.

■ Ordinarily, evidence seized without a search warrant must be the product of a search incident to a lawful arrest if it is to be admissible at trial. Muller v. State, 44 Ala.App. 637, 218 So.2d 698, cert. denied, 283 Ala. 717, 218 So.2d 704; Wilson v. State, 43 Ala.App. 596, 197 So.2d 283. This rule applies unless there are other circumstances which justify a departure from the rule. Duncan v. State, 278 Ala. 145, 176 So.2d 840. And it applies not only to the introduction of physical objects illegally taken, but also to the introduction of testimony concerning objects illegally observed. *Duncan, supra.*

The money and .25 caliber cartridge taken from appellant were not introduced into evidence, but the arresting officer did testify concerning the search and the items seized.

Section 155 of Title 15 provides in pertinent part:

"When arresting a person without a warrant, *the officer must inform of* his authority and *the cause of arrest,* except when he is arrested in the actual com-

mission of a public offense, or on pursuit . . . " (Italics added).

No one contended appellant was arrested in the actual commission of a public offense, or on pursuit. Appellant asserts the arresting officer failed to inform appellant of the cause of arrest.

The arresting officer, Lieutenant Tom Wilber, testified on direct examination:

"Q  All right, sir.  Now, did you place him under arrest?

"A  I did.

"Q  Did you advise him what he was being arrested for?

"A  I did.

"Q  What was that?

"A  He was being arrested for investigation by the Montgomery Police Department for an incident that happened around Montgomery County.

"Q  Did you tell him where it happened?

"A  I told him at the Oil Well outside of Montgomery.

On cross-examination, Lt. Wilber further testified:

"Q  Now, Lieutenant, I think that you said that you told the Defendant that he was being held for investigation of an incident that occurred in Montgomery?

"A  Yes, sir.

"Q  Did you tell him that he was under arrest?

"A  Yes, sir.

"Q  Did you tell him both that he was under arrest and being held for investigation?

"A  I told him that he was under arrest and told him what for and asked him did he mind accompanying me to the Police Department to await the arrival of the Montgomery Detectives and he said 'no.' Then, I read him his rights and didn't question him any further."

There was no objection made to this testimony; no ruling of the Court on this matter was sought or made. Therefore, the question sought to be raised on appeal is not subject to review by this Court. Madison v. State, 32 Ala.App. 617, 28 So.2d 927; Loyd v. State, 279 Ala. 447, 186 So.2d 731.

Appellant further contends the trial court erred in admitting the confession into evidence. Womack v. State, 281 Ala. 499, 205 So.2d 579; Emerson v. State, 281 Ala. 29, 198 So.2d 613.

During the trial, the state called Officer T. J. Ward of the Montgomery Police Department as a witness. The state then asked the court to retire to chambers, and the court granted the request. Outside the presence of the jury, Officer Ward testified that on October 8, 1970, he took a statement from the defendant at the Montgomery Police Headquarters. Only Officer Ward and the defendant were present during the interrogation.

Officer Ward further testified that prior to any statement, he did not threaten the defendant or offer him any reward or hope of reward. In addition, prior to questioning the defendant, Officer Ward informed the defendant of his rights to remain silent and to counsel by having the defendant read the Miranda warning from a card. After the defendant read the card, Officer Ward read a waiver form to the defendant, which was as follows:

"CITY OF MONTGOMERY, ALABAMA

"DEPARTMENT OF POLICE

"  Denzlar McNair
　　　　Name
"  Montgomery Police Headquarters
　　　　Place
"  Wednesday, October 8th, 1970.
　　　　Date
"  6:30 P. M.
　　　　Time
"  Robbery and Murder
　　　　Charge

"Before asking you any questions, I must explain to you that you can remain silent, that anything you say can be used against you in court, that you can talk to a lawyer first and that you have the right to the advice and presence of a lawyer even though you cannot afford to hire one. If you cannot afford to hire a lawyer and want to have one present during interrogation, the court will appoint one before we question you. If you want to answer questions now, you can do so, but you can stop answering at any time.

"  /s/ T. J. Ward
　　　　Officer

"I fully understand the foregoing statement and do willingly agree to answer questions. I understand and know what I am doing. No promise or threats have been made to me by anyone and no pressure of any kind has been made against me by anyone.

"  /s/ Denzler McNair Jr.

"WITNESSES:

_____

_____

_____  "

The appellant then gave the statement to Officer Ward.

■ ■ Extra-judicial statements are prima facie involuntary and inadmissible, and the duty rests in the first instance on the trial court to determine whether or not a confession is voluntary and unless it so appears it should not be admitted. Lokos v. State, 278 Ala. 586, 179 So.2d 714; Sanders v. State, 278 Ala. 453, 179 So.2d 35.

■ ■ The true test is whether, under all the surrounding circumstances, a confession has been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor. If so, whether true or false, such a confession must be excluded from the consideration of the jury as having been procured by undue influence. Guenther v. State, 282 Ala. 620, 213 So.2d 679, cert. denied, 393 U.S. 1107, 89 S.Ct. 916, 21 L.Ed.2d 803; Womack v. State, supra.

The trial court admitted the confession into evidence mainly on the testimony of Detective Ward. The attorney for the appellant thoroughly examined the officer both on voir dire out of the jury's presence, and in court with the jury present, on the question of voluntariness, and the giving of the Miranda warnings.

The appellant testified on voir dire, out of the presence of the jury, that the confession was not voluntary, that he had been coerced, threatened, intimidated, physically assaulted, and denied the right of counsel.

■ ■ This Court has previously recognized the fact that it is not unusual for the voluntariness inquiry to present conflicting evidence. Edgil v. State, 36 Ala.App. 379, 56 So.2d 677. When such a conflict occurs and the trial judge finds that the confession was voluntarily made, great weight must be given to his judgment. This finding will not be disturbed on appeal unless the appellate court is convinced that the conclusion is palpably contrary to the weight of the evidence. Emerson v. State, supra; Harris v. State, 280 Ala. 468, 195 So.2d 521; Edgil v. State, supra. Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. Minirth v. State, 40 Ala.App. 527, 117 So.2d 355, cert. denied, 270 Ala. 228, 117 So.2d 360.

The testimony affords a broad basis for the ruling of the trial court that the confession was voluntarily made. We find no error in the ruling of the trial court.

Appellant further contends the trial court erred in instructing the jury that "any killing committed in the perpetration of or the attempt to perpetrate any robbery" is murder in the first degree. The appellant argues that there was a lack of evidence of robbery, therefore, the charge was abstract.

The only exception taken to the oral charge was based upon a misunderstanding of the punishment for murder in the first degree. This exception was withdrawn after a discussion between the trial judge and the defense attorney. Following this discussion, appellant's attorney announced the oral charge appeared correct and he was satisfied with the instructions.

■ Exceptions to the oral charge of the trial Court must be taken before the jury retires. Any subsequent objection comes too late and cannot be considered on appeal. Segers v. State, 283 Ala. 682, 220 So.2d 848; Hagood v. State, 47 Ala.App. 626, 259 So.2d 679; Moates v. State, 40 Ala.App. 234, 115 So.2d 277.

■ The trial court denied two requested charges. Both of these charges were affirmative in nature. The state's evidence fully justified the jury verdict in this case. While the appellant attempted to controvert the state's evidence by his testimony, this merely created a question of fact of which the jury was the sole and

exclusive judge. The requested charges were properly refused. Young v. State, 283 Ala. 676, 220 So.2d 843.

Further, the trial court overruled appellant's motion for new trial. Suffice it to say that this opinion has treated the rulings complained of in the motion for new trial. There was no error in overruling the motion. Young v. State, *supra*.

We have studied the entire record as required by Title 15, Section 389, Code of Alabama 1940. In the interest of brevity, we refrain from further discussion of this case. In no instance where the trial court's ruling was invoked does error appear. The judgment of conviction is therefore due to be affirmed.

The foregoing opinion was prepared by JOSEPH A. COLQUITT, Circuit Judge, temporarily on duty on the court pursuant to subsection (4) of Section 38, Title 13, Code of Alabama 1940, as amended. The court has adopted his opinion as its own.

Affirmed.

CATES, P. J., and ALMON, TYSON, HARRIS, and DeCARLO, JJ., concur.