314 So.2d 711

**Rollin Travis WEBB**

v.

**STATE.**

**2 Div. 138.**

Court of Criminal Appeals of Alabama.

April 22, 1975.

Rehearing Denied May 27, 1975.

On the afternoon of May 20, 1974, around 1:00 P.M., two black men entered McDaniel's Grocery Store, known as Mac's Quick Shop, located on South Pettus Street, in Demopolis, Alabama, and robbed the operator of the store, Mrs. Essie Lou Taylor, of $150.00 to $160.00 from the cash register. One of the men held a pistol on her while the other one got the money from the cash register. Mrs. Taylor testified when they first came in the store, they ordered one six-pack of Schlitz beer and asked the price of three packages of cigarettes. She put the beer in a sack and that is when she saw the pistol pointed at her. She had $42.00 in her pocketbook and after they left the store she found her pocketbook on the floor. The contents of her purse had been emptied on the floor and her $42.00 was missing.

She described the robbers and the occurrence as follows:

"One of em (sic) was several inches talled (sic) than the one . . . one was several inches taller; the short one is the one that came behind the counter and held the gun on me; the tall one is the one that told me to open the cash register; I opened the cash register and he immediately began to take the money out of the cash register; the one with the gun said 'lay down on the floor'. I lay down on the floor and he said, 'put your hands out in front of you' . . . I did, and the short one came behind the counter first with the gun; he held the gun on me; and the tall one got the money out of the cash register and he asked me 'where was the rest of the money', and I told him there wasn't any more; and he asked me where my gun was; and I told him I didn't have a gun. He repeated that question for at least a half a dozen times and they told me 'not to move'; they threatened my life if I moved; and he did that for at least a half a dozen times; he said that for at least a half a dozen times; and by that time, they said, 'lay on the floor for 10

J. Wm. Thomason, Bessemer, for appellant.

William J. Baxley, Atty. Gen. and Jack A. Blumenfeld, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convictied of robbery and sentenced to ten years imprisonment in the penitentiary. He was represented by retained counsel at arraignment and trial. He pleaded not guilty. After conviction he was found to be indigent and a free transcript was furnished him. Trial counsel was appointed to represent him on appeal.

minutes . . . don't move for 10 minutes' . . . and they was gone."

Mrs. Taylor further testified that she was unable to get up off the floor and a colored man came in the store and helped her up. She immediately called the Police Department and reported the robbery. Chief A. E. Cooper responded to the call. Enroute to the scene of the robbery, the chief met a green Ford car occupied by two blacks traveling at a high rate of speed. He radioed to another officer to stop this car. The radio message was picked up by Police Officer Jesse Langley.

Langley testified that he was patrolling on U.S. 80 and received a radio call about a robbery at Mac's Quick Shop and shortly thereafter he got a call from Chief Cooper about a green Ford leaving the vicinity of the grocery store at a high rate of speed. Langley drove eastward on Highway 80 to the intersection of Highway 43 and saw a green Ford parked on the side of the road and there were two colored subjects in the car. As he approached the Ford it started pulling away. He followed it a short distance and turned on his lights and pulled the car over. The officer got the two men out of the car, frisked them and searched the car. He found a pistol under the front seat. He also found a ring of keys and a six-pack of cold Schlitz beer. He identified the two black men as appellant and Richard Dunning. Langley radioed the station and Chief Cooper arrived in a few minutes. The men were put in Chief Cooper's car and Langley drove the Ford to the station house. Chief Cooper carried the suspects to the grocery store and Mrs. Taylor identified Dunning as the man who held the pistol on her during the robbery. She said appellant was not the other robber. She was shown the pistol that was taken from the green Ford and said that was not the pistol used during the robbery.

Both appellant and Dunning were arrested and put in separate cells in the jail. Chief Cooper read appellant the *Miranda* warnings and he signed a waiver of counsel form. The form is as follows:

"DPS–30         10th grade
1–29–57          3:55 P.M.

### WAIVER OF COUNSEL BY DEFENDANT IN CUSTODY

"I, Rolin Travis Webb, have been informed by the undersigned law enforcement officers, prior to being questioned by them, that 1 am suspected of the offense of Robbery in Marengo County, Alabama, on the 20th day of May, 1974, and have been informed by them of my Rights as follows:

1. That I may remain silent and do not have to make any statement at all.

2. That any statement which I might make may be used against me in Court.

3. That I have a right to consult with an attorney before making any statement and to have such attorney present with me while I am making a statement.

4. That if I do not have enough money to employ an attorney, I have the right to have one appointed by the Court to represent me; to consult with him before making any statement; and to have him present with me while I am making a statement.

5. That if I request an attorney, no questions will be asked me until an attorney is present to represent me.

"After having my Rights explained to me, I freely and voluntarily waive my right to an attorney. I am willing to make a statement to the officers. I can read and write the English language and fully understand my Rights to an attorney. I have read this Waiver of Counsel and fully un-

derstand it. No threats or promises have been made to me to induce me to sign this Waiver of Counsel and to make a statement to the officers.

"This 20th day of May 1974.

"X/S/ Rollin Travis Webb

"All of the Rights in the above Waiver of Counsel were read and explained to the above defendant by me and he freely and voluntarily waived his right to an attorney. No threats, promises, tricks, or persuasion were employed by me or anyone in my presence to induce him to waive his rights to an attorney and to make a statement without an attorney. He freely and voluntarily signed the above Waiver of Counsel in my presence after having read it.

"/S/ Lt. G. H. Jones

TITLE

"Witnessed:

"/S/ A. E. Cooper

_____."

Appellant then wrote a statement in his own handwriting as follows:

"5–20–74                9:15 P.M.

"Statement of Rollin T. Webb

"We, left about 1:00 clock (sic) and we got hear (sic) 5:00 clock (sic). We went to Linden and we got there about 9:00 clock (sic). We got the truck and left, got back hear (sic) 10:30 or 11:00 o'clock. And went and got the pick-up truck, came back to town hit the store and was on the way home. Me, Gerald, David, Richerart, Charles left Bessemer about 1:00 o'clock and we got hear (sic) about 5:00 o'clock. We went to Linden and we got there about 9:00 o'clock. We got there and got the truck and left. And we got back hear (sic) about 10:30 or 11:00 o'clock. And went and got the pick-up truck came back to town took to (sic) money from the store. And started back home and got stoped (sic). Gerald and Richerard went in the store. Richerard hole (sic) the gun the gun (sic) was a 32 cal. shine. The gun was toss (sic) under a 65 chev, blue, by Rollin Webb. The money was carry (sic) by Gerald, and David.

"X /s/ Rollin Travis Webb

signed

"/s/ G. H. Jones                MJ/10–2–74

WITNESS                State Exhibit's 5

"/s/ A. E. Cooper

WITNESS"

———◆———

Chief Cooper was convinced that appellant's signed statement was not entirely the truth, and he contacted the Sheriff of Marengo County to come to the city jail.

When the sheriff arrived, the chief asked him to carry appellant to the county jail in Linden and continue to interview him. He told the sheriff that appellant had signed a waiver form and he wanted to separate appellant and Dunning so that they could not hear what each was saying in connection with the robbery.

The sheriff carried appellant to Linden and as they walked in the jail, appellant told the sheriff he would like to talk to him. The sheriff told him he had some things to do but would be back later. He went home and ate supper and returned to the jail. The sheriff asked him if wanted to make a statement and appellant said, "Yes, sir." The sheriff told him he did not have to make a statement at all and gave him the *Miranda* rights and warnings and appellant made an oral statement to the sheriff. The statement is as follows:

"He told me that he and Free Man, Charles Lewis, a boy named Bill and Richard Dunning left Birmingham in a greenish yellow Ford that was rented from a Ford place in Birmingham by Charles Lewis; that they came to Dixon Mills, Alabama; that they purchased, or Charles Lewis purchased a pulpwood truck with . . . it was a truck that they had taken the pulpwood frame off, from a man in Dixon Mills. They left Dixon Mills . . . Charles Lewis driving the pulpwood truck; the rest of them in the car . . . they drove back to Demopolis; they parked the car at Grant City Shopping Center in Demopolis; that Charles Lewis got out of the truck and did some shopping; that the four of them then went to Hale County. He did not understand exactly where the county line was and I explained to him where the county line was. That they stole a pickup truck from a boat landing in Hale County for the purpose of using it in a robbery in Demopolis, Alabama; they came back to Grant City Shopping Center; they picked up Charles Lewis . . . at the time they split up, Charles Lewis and a juvenile in the car . . .

the yellowish green car; and that he, Richard Dunning and Gerald Lewis, went to Mac's Quick Shop . . .

"Q. By he, you mean the Defendant?

"A. The defendant, Rollin Webb. That he was driving the pickup truck; that he pulled up to the side of Mac's Quick Shop . . . he described it to me . . it indicated it was on the east side of Mac's Quick Shop; that he stayed in the truck with the motor running; that Richard Dunning and Gerald Lewis got out of the truck; went into the place; they came out; they had a six pack of beer and some money; they jumped in the truck; he drove around the corner to where Charles Lewis and the juvenile was waiting in the light colored Ford. He and Richard Dunning got out of the car . . . truck . . . got into the car and Richard Dunning was driving . . . Charles Lewis on the right side, he in the middle . . . the defendant in the middle . . . the juvenile got into the pickup truck; they kept the money in the pick-up truck; Gerald Lewis and the juvenile headed to Bessemer. They drove out to what we called, around the road that goes by the housing project in Demopolis, to the government housing project coming into the intersection of Highway 43 and 80. He stated they turned to the left at 43 and 80; he pulled back up to Grant City Shopping Center; Charles Lewis got out of the car; got into the pulpwood truck and drove about, I would say about 300 to 400 yards and a policeman turned a blue light on him. When the policeman turned the blue light on him, he pulled over the (sic) side of the road. The policeman got out of the car; they were afraid because Rollin still had the pistol in his hand. He stated that he started to pull off again; that Dunning started to pull off . . . the policeman turned and went back to his car and when he did he threw the pistol out of the car; threw it up under a light blue Chevrolet parked in front of some kind of ware-

house. I asked him if he could take me to that warehouse and he said he could. I asked him would he take me there and he said he would. I called Deputy Lawrence from home; he came to the jail; we took Rollin to Demopolis; he showed me a warehouse that was the Coca Cola Warehouse and he told me that the pistol, when it hit the ground, went up under the car; and at that time we started . . . I took him on to the police station because the car was moved . . . this was some 9:00 or 10:00 at night, I don't know exactly the time. There was no pistol in sight. I took him on to the police station and Deputy Lawrence and myself and Detective Dickson with the Demopolis Police Department; I instructed them to try to find out who owned the light blue car and they did so and some time later on that night they brought me a pistol. That was the basis of his statement.

"Q. And he said the pistol he threw out was the pistol the other two had used in the robbery?

"A. Yes, sir."

Lieutenant George H. Jones, a Criminal Investigator with the Department of Public Safety, was present when appellant signed the waiver form and Jones signed his name thereto as a witness. Jones asked appellant what happened to the gun and appellant replied that he drove out to the Coca Cola parking lot and threw it under a 1965 blue automobile.

Mr. Willie Collins, Jr. testified that when he got off work on May 20, 1974, he went to the Coca Cola plant where his brother-in-law, Bobby Lee Owens, worked. He saw a pistol under a 1965 blue Chevrolet. The car belonged to his brother-in-law; that he picked up the pistol and put it in his pocket and carried it home and gave it to his mother. When the officers were looking for the pistol, he gave it to his brother-in-law, who, in turn, gave it to a deputy sheriff. The proper predicate was laid and the pistol was introduced in evidence over appellant's objections.

A voir dire examination was conducted out of the presence of the jury to determine the voluntary character of the confessions and much testimony was had on this issue. The court found all statements made by appellant to be voluntarily made and the confessions were allowed in evidence.

Appellant took the stand and tried to repudiate the statements he made to the officers. On cross-examination he admitted the officers read him his rights and he signed a statement but he was not sure what he had signed. He did admit that after the robbery and while he and Dunning were riding in the green Ford that Dunning handed the pistol to him and told him to throw it out the window and that he threw it. He further admitted there was a discussion about robbing a store and they rode by and looked at the store.

Dunning pleaded guilty to robbing the store. He testified during appellant's trial and tried to exonerate him from any participation in the robbery. He claimed that appellant was four or five blocks away when he and Gerald Lewis robbed the store and that appellant was not in on the plan to rob the store.

Dunning signed a written confession and this confession was introduced to impeach his testimony at appellant's trial. In this confession Dunning said that prior to the robbery appellant went in the store and bought a package of Kool cigarettes and that appellant drove the stolen truck to the store and kept the motor running while he and Gerald Lewis committed the robbery.

In *Botsford v. State,* 54 Ala.App. 482, 309 So.2d 835, Ms. released by this court on November 26, 1974, Judge DeCarlo, in holding Botsford's confession was voluntary, quoted from *McNair v. State,* 50 Ala.App. 465, 280 So.2d 171, as follows:

"This Court has previously recognized the fact that it is not unusual for the voluntariness inquiry to present conflict-

**264**

ing evidence. Edgil v. State, 36 Ala. App. 379, 56 So.2d 677. When such a conflict occurs and the trial judge finds that the confession was voluntarily made, great weight must be given to his judgment. This finding will not be disturbed on appeal unless the appellate court is convinced that the conclusion is palpably contrary to the weight of the evidence. Emerson v. State [281 Ala. 29, 198 So.2d 613], supra; Harris v. State, 280 Ala. 468, 195 So.2d 521; Edgil v. State, supra. Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. Minirth v. State, 40 Ala.App. 527, 117 So.2d 355, cert. denied, 270 Ala. 228, 117 So.2d 360."

■ Appellant claims that he is an illiterate person and was confused and mixed up when he was being questioned by the officers over a long period of time, and, therefore, his confession was not a voluntary one.

The Supreme Court in *Elrod v. State,* 281 Ala. 331, 202 So.2d 539 and *Hutto v. State,* 278 Ala. 416, 178 So.2d 810, put to rest such claims and contentions now advanced by appellant.

■ There was no motion to exclude the state's evidence and no motion for a new trial; there was no request for the affirmative charge and no exceptions reserved to the court's oral charge. In this state of the record, there is nothing to review. *Eady v. State,* 48 Ala.App. 726, 267 So.2d 516; *Grant v. State,* 46 Ala.App. 232, 239 So.2d 903; *Robinson v. State,* 46 Ala.App. 684, 248 So.2d 583.

The judgment of conviction is affirmed.

Affirmed.

All the Judges concur.