Robbery; twenty years.
On August 8, 1980, Bruce Charles Hamilton was the co-manager of Wendy's Hamburgers in Huntsville, Alabama. About 11:15 P.M., two black males wearing stocking masks rushed into the store, pointed guns at the employees and ordered them to open the register. The two men took approximately $300. from the register and, as they ran out the building, one of the men fired a shot over the employees' heads.
Phil Guthrie of the Huntsville Police Department investigated the robbery, and received information implicating the appellant. On October 3, 1980, he went to the appellant's residence and, according to Guthrie, the appellant voluntarily went with him to the Huntsville Police Department. Guthrie stated that prior to any questioning, appellant was warned of his constitutional rights and he indicated that he understood them. Guthrie testified that the interview with the appellant lasted approximately two hours. Without any promise of reward or coercion, the appellant gave the following hand-written statement confessing his part in the robbery:
 "I James H. Chunn, Jr. Carl Draper robber [sic] Wandys [sic] on South Parkway no drive. And the only robber [sic] that i [sic] every [sic] did in my life. We get [sic] about $300.00 altogether."
The above statement was signed by James H. Chunn, Jr. and witnessed by Detective Jerry Hammonds and Officer Phil Guthrie.
Detective Hammonds' testimony was substantially the same as that given by Officer Guthrie. At the end of Hammonds' testimony, the State rested its case and the appellant made a motion to "dismiss for lack of evidence." The motion was overruled and the appellant took the stand in his own behalf.
The appellant testified that he accompanied Officers Guthrie and Hammonds to the police department because he felt "obliged" *Page 1141 
to go. Chunn stated that four officers questioned him and they were "switching backwards and forward." According to Chunn, the officers told him that if he would give a written statement admitting to one robbery, he would not be charged with other robberies. He also stated that the officers told him his bond would be reduced to $5,000. and it would cost him $750. cash to get out of jail if he confessed.
Chunn stated that before he wrote the statement his rights were explained to him, but the confession was dictated to him. He said, however, that it was not dictated word-for-word. The appellant explained at the time he made the statement he was tired and nervous and was convinced it would be better for him to admit one robbery than to have four or five robbery charges. The appellant testified that he did not rob Wendy's and that he was home on the evening of the robbery.
During cross-examination, Chunn denied that on his arrival at the Huntsville Police Department he was advised of his constitutional rights. He also said that Officer Hammonds lied when he said that he had told the appellant that he would be charged with robbery. Appellant admitted that he had been convicted of burglary of a motor vehicle in 1971, and had been placed on probation.
Larry Andrews testified that he had known the appellant for approximately thirteen years and that his general reputation was good.
Catherine Wherry Richburg, the appellant's girl friend, testified that his reputation was good and that she would believe him under oath. She said that on Friday, August 8 at 11:15 P.M., she was with the appellant and they returned home at midnight after attending a barbeque with some friends.
 I
The appellant complains that his handwritten confession was coerced and it should have been suppressed.
Prior to trial, at a hearing on appellant's motion to suppress the confession, Officers Guthrie and Hammonds testified that the appellant accompanied them to the Huntsville Police Department voluntarily and that, prior to any questioning, they advised him of his constitutional rights. They said that the appellant indicated he understood those rights and afterwards talked to the officers. According to the officers, the interview with the appellant took about two hours and the appellant was not physically mistreated or coerced into making the confession. At the conclusion of all the testimony, the court overruled the motion to suppress the confession.
Under these circumstances, the trial court, after having determined the confession to be voluntary, properly admitted it into evidence. Pike v. State, Ala.Cr.App., 340 So.2d 865, cert. denied, Ala., 340 So.2d 870 (1976). Only a preponderance of evidence indicating the confession was voluntary is needed to convince the court that it should be admitted into evidence.Bufford v. State, Ala.Cr.App., 382 So.2d 1162, cert. denied, Ala., 382 So.2d 1175 (1980). The voluntariness of a confession is a question of law for the court to be determined from the facts and circumstances surrounding the confession. Garrison v.State, Ala.Cr.App., 372 So.2d 55 (1979); Stewart v. State,49 Ala. App. 681, 275 So.2d 360 (1973).
The only evidence that the appellant's confession was involuntary and coerced came from the appellant. We recognize that it is not unusual for a conflict of evidence to be presented on the question of whether a confession is voluntary. See Tanner v. State, 57 Ala. App. 254, 327 So.2d 749 (1976);Webb v. State, 55 Ala. App. 258, 314 So.2d 711, cert. denied,294 Ala. 774, 314 So.2d 717 (1975). After considering all the evidence, the trial judge resolved the factual dispute in favor of the State, and his decision was not against the great weight of the evidence. See Garrison v. State, supra; Stewart v.State, supra. *Page 1142 
 II
The appellant contends that the trial court committed reversible error when it would not permit the appellant to question witnesses about his general reputation in the community. He maintains that the trial court materially hampered the presentation of an adequate defense by sustaining the prosecution's objections to appellant's attempt to establish his good character.
Specifically, the appellant refers to the following portion of the record:
 "Q. [By defense counsel] Let me ask you this, Mr. Andrews: You say you are very familiar with Mr. Chunn?
"A. Yes.
 "Q. Are you familiar with Mr. Chunn's general reputation in the community prior to August 8th, 1980?
 "MR. GARDNER: [Assistant District Attorney] I object to the form of that question.
"THE COURT: Overruled.
"A. His general reputation?
"Q. Yes, sir.
"A. What do you mean by that?
 "Q. I mean are you familiar with his reputation for good or bad?
"MR GARDNER: I object to that question.
 "Q. Are you familiar with his general reputation in Huntsville, Alabama, around or prior to August 8, 1980?
 "MR. GARDNER: Judge, I object to that question. I don't think it's properly asked.
"THE COURT: Overruled.
 "Q. All right. Mr. Andrews, what is, based on your experience, the Defendant's general reputation in Huntsville, Alabama, at the time I just mentioned?
"A. I think it's good.
 "Q. Is it a reputation for truthfulness or untruthfulness?
"MR. GARDNER: I object to that question.
"THE COURT: Sustained.
 "Q. Based on the general reputation as you know it, would you believe a person under oath?
"MR. GARDNER: I object to that question.
"THE COURT: Sustained.
 "Q. Once again, I ask you, Mr. Andrews, what is the general reputation of the Defendant in the community?
"MR. GARDNER: I object, its already been asked.
 "Q. Around the time of August, 1980, say, prior to August 8th, 1980?
 "MR. GARDNER: I object to that question, Your Honor, asked and answered.
"THE COURT: Sustained.
"MR. SHEPARD: No further questions."
The law is clear in Alabama that the character of the accused may be proved by evidence of his general reputation in the community where he lives prior to the offense in question. Hillv. State, Ala.Cr.App., 366 So.2d 296 (1978), affirmed, Ala.,366 So.2d 318 (1979). This rule is also applicable to testimony regarding the accused's general reputation for a specific trait germane to the prosecution. C. Gamble, McElroy's AlabamaEvidence §§ 27.01 (3) (3d ed. 1977).
In the present case, the witness was allowed to testify that the appellant's general reputation in the community was good. However, the remaining questions were not predicated on the witness' knowledge of the appellant's reputation for a specific trait, such as truthfulness, and were properly disallowed.
 III
The appellant insists that the trial court committed reversible error when it allowed into evidence unsubstantiated statements regarding the appellant's prior record. He argues that the State was allowed to show his prior conviction for burglary of a motor vehicle without proof of a "certified record of the prosecution."
We note that the appellant did not object at trial when questions were asked concerning his record. Under these circumstances, there is nothing preserved for this court to review. Oates v. State, Ala.Cr.App., 375 So.2d 1285 (1979). *Page 1143 
In the present case the appellant took the stand in his own behalf and the State had a right to impeach his credibility by proving his previous conviction of a crime involving moral turpitude. § 12-21-162 (b), Code of Alabama 1975. Burglary is a crime involving moral turpitude and is properly used for impeachment purposes. Edmonds v. State, Ala.Cr.App.,380 So.2d 396 (1980).
On cross-examination, the appellant admitted the conviction. Under these circumstances, the State is not required to prove a prior conviction with a certified copy of the judgment entry or the docket sheet. C. Gamble, McElroy's Alabama Evidence, 145.01 (15) (3d ed. 1977). See also Oatsvall v. State, 57 Ala. App. 240, 327 So.2d 735 (1975), cert. denied, 295 Ala. 414,327 So.2d 740 (1976).
 IV
The appellant asserts that the State failed to prove a prima facie case of robbery. The facts presented by the State in this case, when considered with the appellant's confession, are sufficient to present a question of fact for the jury. Oatsvallv. State, supra. In our judgment, there was legal evidence from which the jury could by fair inference find the appellant guilty of robbery in the first degree. See Wilcutt v. State,284 Ala. 547, 226 So.2d 328 (1969). Therefore, the overruling of the appellant's motion to exclude and motion for new trial was proper. See Young v. State, 283 Ala. 676, 220 So.2d 843
(1969).
We have examined the record and have found no error; therefore, the judgment and conviction by the Madison Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.
 *Page 1