LEIGH M. CLARK, Retired Circuit Judge.
A jury found appellant guilty of an assault in the first degree upon Anna Kay Kennedy as charged in an indictment pursuant to Code of Alabama 1975, § 13A-6-20(a)(1), which provides:
“A person commits the crime of assault in the first degree if:
“With intent to cause serious physical injury to another person, he causes serious physical injury to any person by means of a deadly weapon or a dangerous instrument; ... . ”
Appellant had been previously convicted of a felony, and the court fixed his punishment at imprisonment for twelve years and sentenced him accordingly.
The evidence is unsatisfactory and contradictory as to the time of night of the particular incident, but there can be no doubt that it shows that on the night of January 23-24,1981, the alleged victim was injured in the face by a blast from a shotgun in the hands of defendant. Several pellets entered the victim’s skin, and she was treated in a hospital for her wounds about two weeks. The controverted issue of fact was whether defendant intentionally shot the victim.
The victim testified:
“Q. Do you ■ know where Rob Danzy lives?
“A. Yes.
“Q. Were you anywhere close to his house at that time?
“A. I was by his house.
“Q. Okay. As you were walking, did you hear someone call your name?
*1316 “A. Yes.
“Q. Did you recognize that voice?
“A. Yeah.
“Q. All right. Whose voice was it?
“A. Willie James [otherwise identified as the defendant].
“Q. Had you known him before?
“A. Yes, sir.
“Q. Had you gone with him, Anna?
“A. Yes. Used to, yes.
“Q. When you turned around, what happened then?
“A. That is when he shot.
“Q. And where were you hit?
“A. In the face.
“Q. Okay. Can you tell what kind of shot it was, did you see the gun?
“A. No, sir.
“Q. Okay. Now, say you were hit in the face?
“A. Yes, sir.
“Q. And, when you were hit in the face, what did you do then?
“A. I ran.
“Q. Where did you run to?
“A. Over to next-door. I forgot her name at the house there.
“Q. Did an ambulance or rescue squad come to that house?
“A. Yes.”
According to the testimony of defendant, he had returned from a squirrel hunt and was in the process of taking his shotgun from the trunk of his car when it went off; he was not aware of the presence of the victim at the time, or of anyone being hurt by shot from the gun, until he heard about it the next day.
Appellant’s first insistence on a reversal is that his “statement was the product of an illegal arrest without probable cause and was improperly admitted” in evidence. The statement of. defendant was admitted in evidence during the testimony of Abbeville Police Officer Johnny Bradley just after the following occurred:
“Q. All right, sir. What was the statement that he made to you at that time?
“MR. ADAMS: We object, because the proper predicate hasn’t been laid.
“THE COURT: I overrule you.”
In the light of the present criticism of the admission in evidence of the defendant’s statement, the evidence was probably not as clear as it should have been as to the circumstances of defendant’s arrest. Even so, we think them sufficient to show there was probable cause therefor. Appellant argues in his brief on the point as follows:
“It is clear also that no testimony was presented in the instant case explaining how investigating officers connected the Appellant to the shooting incident. No probable cause was shown for the arrest of Willie James Taylor.”
According to the transcript of the evidence, the arrest of defendant was made by Officer Johnny Bradley during the afternoon of January 24, 1981. He found defendant at defendant’s brother’s house and had a conversation with the defendant there “at approximately 2:25 P.M.” on that day and took him down to the city jail where the statement was given to him after unquestioned sufficient warnings and instructions as to his constitutional rights, including his right to the presence of an attorney at no expense to him, which he expressly declined. Abbeville Police Officer Wayne Adkinson testified that he saw Anna Kennedy in her wounded condition, which appeared to him to be a shotgun wound of her face, before she was sent to the hospital. He further said:
“Q. All right. Did you look, try to find Willie James Thomas that evening?
“A. Yes, I did.
“Q. Did you find him that evening?
“A. No, sir. I did not.”
Notwithstanding the undesirable scarcity of the evidence of the information possessed by police officers as to the identity of the person who had shot the victim, we cannot accept any view that Officer Adkinson did not learn from her, at the time he first saw her in her wounded condition, that she recognized the voice of the defendant immediately before she was shot. At the time she was observed by Officer *1317 Adkinson, she was conscious and rational. It is hardly reasonable to conclude that Officer Adkinson would have tried to find the defendant that evening without his having ascertained, directly or indirectly from the victim, information that tended to link defendant with the shooting. Nor do we think that it is reasonable to conclude that Officer Bradley did not have the benefit of this information, or substantially the same information, approximately twelve hours thereafter, when he located defendant at defendant’s brother’s house, had a conversation with him there and took him to jail. This is especially true, we think, in the light of the failure of defendant to contend otherwise on the trial and the fact that a woman had been shot in the face with a shotgun and had been sent to the hospital would hardly have escaped the notice of the Abbeville Police Department in general during the intervening approximately twelve hours between the incident and defendant’s arrest. The mere fact that an arresting or detaining officer does not personally have probable cause to believe that a felony has been committed, and that the one arrested or detained committed the felony, does not invalidate the arrest. Robinson v. State, Ala.Cr.App., 361 So.2d 379, 382 (1978), writ denied, 361 So.2d 383.
We do not agree with appellant’s contention that there was no independent proof of the corpus delicti prior to the admission in evidence of defendant’s inculpa-tory statement. The victim’s identification of defendant’s voice as the one she heard calling her name at the time she was shot and the fact that defendant did not remain at the scene, and was not located until approximately twelve hours thereafter, constitute, we think, ample evidence of the corpus delicti.
"... To prove prima facie corpus delicti in a murder prosecution, for example, the state does not have to negative beyond a reasonable doubt that the death did not result from an accident, suicide, or natural causes, but it is required to show only a reasonable probability that a criminal act of another was the cause of death.” Gamble, McElroy’s Alabama Evidence, § 200.13 (1977)
During the closing argument of counsel for the State, the following occurred:
“MR. ADAMS: Judge, I object. There is no testimony that he had any trouble with her prior to this.
“MR. SORRELLS: They had busted up, broken up.
“THE COURT: There was some evidence they had been together and were separated. I overrule you. I think that is an inference that could be drawn from the evidence.”
As to her acquaintance with defendant, the victim had testified on interrogation by the State:
“Q. Had you known him before?
“A. Yes, sir.
“Q. Had you gone with him, Anna?
“A. Yes. Used to. Yes.”
On cross-examination by defendant, she testified:
“Q. Anna, how long had you gone with Willie James before this happened?
“A. We had quit for two months.
“Q. Are you all going together now?
“A. Now?
“Q. Yeah.
“A. No, sir.
“Q. Not going together at all?
“A. No, sir.”
The argument of counsel for the State indicates on its face that counsel was not endeavoring to inject some fact based on his own knowledge as distinguished from what he inferred from the evidence. The court in ruling on defendant’s objection made it clear that the argument should not be interpreted otherwise. This kind of argument is usually entirely proper. Emerson v. State, 281 Ala. 29, 198 So.2d 613 (1967); Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967); Evans v. State, Ala.Cr.App., 389 So.2d 567 (1980). We think the inference sought to be drawn by the prosecuting attorney did not transcend the proper latitude that should be allowed counsel in drawing infér-ences from the evidence and that the ruling of the trial court in this particular was not erroneous.
*1318 We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.