HARRIS, Judge.
Ronnie Lee Parker was convicted of first-degree robbery for his participation in the armed robbery of a convenience store in Bessemer, Alabama. He was sentenced to 20 years’ imprisonment.
The facts and circumstances surrounding the incident in question were not disputed at trial. The State presented a confession in which the appellant admitted his guilt.
The sole issue on this appeal is the admissibility of the confession presented at trial. The appellant contends that this confession, his second confession after his arrest, was inadmissible because it was “tainted” by an earlier, illegal confession. We disagree.
It is undisputed that, after his arrest, the appellant was transported to the Leeds, Alabama, jail, where he was incarcerated for a period of three days. During this period of incarceration he made a confession to Sergeant McDonald of the Birmingham Police Department. The contents of this first confession were not divulged at trial. After three days the appellant was transported to the Birmingham City Jail for a day and then to the Bessemer City Jail, where he made a second confession, the one admitted at trial, to Detective Gwin of the Bessemer Police Department.
During the hearing to determine the admissibility of this second confession, the appellant testified that his first confession was made only after he had been beaten. He also stated that his requests to make telephone calls to his mother and his attorney had been repeatedly denied, and that he was not advised of his Miranda rights before the first confession was made. He admitted, however, that he was permitted to make telephone calls after his transfer to the Birmingham City Jail. Appellant’s testimony concerning the “beatings” at the Leeds Jail, the exact time of his first confession, and the number of days of incarceration in each of the jails, was somewhat confusing and ambiguous. On cross-examination, the appellant stated that he was “beaten” and “bruised,” but that he was not “hurt.” He stated that he was hit in the face and the back of the head so hard that it put knots on his head and bruised his face and made it “swell up.” He later changed his story and stated that, although he was hit in the face, his face was not bruised, that the only bruises were under his hair on the back of his head where they did not show.
The State presented evidence that the appellant was first advised of his Miranda rights immediately after his initial arrest, while he was being transported to the Leeds Jail. The State did not present any evidence concerning the first confession at the Leeds Jail, but there was evidence that the first confession was a product of an investigation on an entirely different matter.
Detective Gwin testified that he began his investigation of the instant robbery on December 24, 1981, the day of the robbery and the day the appellant was arrested. He stated that he first saw the appellant in *281 a line-up at the Leeds Jail on December 26, at which time he took some photographs of the appellant. He testified that he did not see any signs that the appellant had been beaten. He did not notice any bruises on appellant’s face. A photograph taken on the 26th was introduced to demonstrate appellant’s appearance at that time. Detective Gwin further testified that he transported the appellant to the Bessemer City Jail on December 28. He read the appellant the Miranda warnings once on the way, and again just before taking appellant’s second confession. He admitted that Sergeant McDonald had stated that the appellant had confessed to some involvement in the instant robbery, but he explained that he, Detective Gwin, had no knowledge of the details of the prior confession. He stated that prior to appellant’s second confession there were no threats, promises, or inducements, made to the appellant, that the appellant was not coerced in any manner, whatsoever. He further stated that the appellant made no requests at that time for an attorney or to make any telephone calls. The appellant indicated that he understood his rights, but agreed to answer questions. He voluntarily completed a three-and-a-half page statement, read it, and signed it.
There was also evidence that appellant’s attorney did not learn of appellant’s first confession, the one that was allegedly the product of physical abuse, until it was mentioned at trial.
Based on the evidence presented during this “voluntariness” hearing, the trial court ruled that appellant’s second confession was admissible.
This ruling, based on the “totality of the circumstances” evidenced during a thorough “voluntariness” hearing, was a matter within the sound discretion of the trial court. Chunn v. State, 402 So.2d 1139 (Ala.Crim.App.1981); Moore v. State, 415 So.2d 1210 (Ala.Crim.App.1982); Harris v. State, 420 So.2d 812 (Ala.Crim.App.1982). It “will not be disturbed on appeal unless it appears to be contrary to the great weight of the evidence or is manifestly wrong.” Tice v. State, 386 So.2d 1180 (Ala.Crim.App.), cert. denied, 386 So.2d 1187 (Ala.1980); see also, Harris v. State, supra; and Williams v. State, 461 So.2d 834 (Ala.Crim.App.1983).
Under the circumstances it does not appear that the trial court abused its discretion, i.e., that its “voluntariness” determination was contrary to the evidence or manifestly wrong. The admissibility of appellant’s second confession in this case “turns, as it does in so many others, on the question of which witnesses the trial judge believed.” Moore v. State, supra. Although the appellant presented evidence to the contrary, there was sufficient evidence to support a finding that the first confession was not illegally obtained so as to “taint” the second confession, and overwhelming evidence to support a finding that the second confession was voluntarily and intelligently made. As noted in Moore v. State, supra.
“ ‘The trial court does not have to accept the testimony of (the) defendant as to the voluntariness of a confession if there is substantial testimony by others sufficient to constitute a predicate for the admission in evidence of the confession.’ Bradley v. State, 337 So.2d 47, 50 (Ala.Cr.App.1976).”
Furthermore, even if appellant’s first confession had been illegally obtained, any “taint” had arguably been purged before the second confession was made. There was evidence that the two confessions were entirely independent of each other, that the first confession was the product of an investigation on another, independent matter. The first confession was taken by a Birmingham police officer, and the second confession was taken by a Bessemer police officer who testified that he had no knowledge of the contents of the first confession and had not discussed its details with the Birmingham police officer. The first confession was made at the Leeds Jail and the second confession was made several days later at the Bessemer City Jail, after an intermediate period of incar *282 ceration at the Birmingham City Jail. The appellant, himself, testified that the authorities at the Birmingham City Jail were very accomodating. Furthermore, the second confession was taken only after the appellant had been carefully instructed as to his Miranda rights (on at least two occasions after the first confession had been made) and had voluntarily agreed to answer questions. “Once it is shown [as it arguably was shown in the instant case] that the improper influence or inducement [for the earlier confession] had been dispelled, there is no reason not to admit the subsequent confession.” Hollis v. State, 399 So.2d 935 (Ala.Crim.App.1981), and cases therein cited.
For these reasons, we cannot hold that the trial court erred in admitting appellant’s second confession. This cause is, therefore, due to be affirmed.
.AFFIRMED.
All the Judges concur.