HARRIS, Judge.
Appellant was convicted of robbery and the jury fixed his punishment at ten years imprisonment in the penitentiary. Prior to arraignment appellant was found to be indigent and counsel was appointed to represent him at arraignment and trial. After conviction he gave notice of appeal and was furnished a free transcript and trial counsel was appointed to represent him on appeal.
The evidence is undisputed that on April 6, 1975, James Edward Bailey, an employee of Pinkerton Security Agency, was on duty as a security guard at Butrus Supermarket in Birmingham, Alabama, when a black man came in the store and pointed a pistol in his face and took his .38 Smith and Wesson pistol out of his holster. Appellant did not testify or offer any evidence in his defense.
Bailey further testified that when the black man entered the store, he walked up to where he was sitting near the front door and asked him for a match and he told the man that he did not have a match. The man turned and walked toward one of the *1369 two cash registers then in operation and he thought the man was going to buy some matches, but a few moments later the man came back to Bailey and pointed a .22 caliber pistol in his face and took his pistol. After getting Bailey's pistol he held one pistol on Bailey and the other pistol on the person at the first cashier register demanding that he remove the money drawer from the register and place it on the counter. After the drawer was placed on the counter, another employee threw a beer or wine bottle on the counter near the bandit and the bottle exploded. The explosion of the bottle scared the would-be robber and he turned and fled out the front door of the building. Bailey followed him out to the parking lot and got within two or three car lengths of the fleeing robber who turned and fired two shots at Bailey. Bailey ran back in the store and called the police who arrived in five or ten minutes. He told the officers that the robber was short, stocky built, had sideburns and was wearing some type of cap.
On April 16,1975, appellant was arrested at another grocery store and at that time the pistol taken from Bailey at Butrus Supermarket was recovered.
Appellant objected to any in-court identification and was allowed to conduct a voir dire examination of Bailey out of the presence and hearing of the jury. Bailey testified that the robber was in the store for five or ten minutes and for two to three minutes of that time he was face to face with the robber who had the pistol pointed directly at his face. He further testified that later he was called at his home to go to the City jail to view a lineup. He immediately picked out the fifth man in the lineup as the man who took his pistol at gunpoint on April 6,1975. He also stated that at the lineup he was informed that his pistol had been recovered. He said, “I recognized the person the moment I saw him,” but at that time he didn’t know that anyone was under arrest. Bailey further testified that he had never seen the robber before but he made a positive identification of appellant as the man who took his pistol saying, “I mean when someone walks up to you and puts a gun in your face, you look at him.” Bailey further testified that he had seen appellant on several occasions since the lineup when he was called to Court as a witness.
At the conclusion of Bailey’s testimony the Court announced that he was satisfied about the identification of appellant.
Sergeant E. M. Cousins of the Birmingham Police Department was called on voir dire concerning the voluntariness of a confession. He testified that on April 17, 1975, he took a statement from appellant at the Birmingham City Jail and he was aware that there had been a struggle when appellant was arrested at Ritchey’s Grocery Store. The struggle was between Mr. Rit-chey, his son, and appellant, and Mr. Rit-chey got shot in the scuffle. No police officers were involved in the scuffle and struggle with appellant. Sergeant Cousins stated that after appellant had been identified in the lineup, he read him his constitutional rights from a Miranda card and that appellant stated that he understood his rights and was ready to make a statement. A written statement was taken and signed by appellant.
Appellant was then called on voir dire. He testified that Officer White informed him of some cases in which he was under investigation and told him “if I would scratch his back, he would scratch his.” He further stated that at the time of this interrogation he was faint and dizzy as a result of a head wound and that he was never informed of his rights and never signed a waiver. He also denied that he signed any statement concerning the robbery of the security guard at Butrus Supermarket. Appellant admitted that Mr. Ritchey was the man that hit him on the head.
During the voir dire hearing the officer testified that no promises, threats, rewards, pressure or other inducements were used or employed to get appellant to make a statement.
Appellant was shown the written statement that he signed and he stated that it *1370 was his name but not his signature. The officer explained that he had appellant put his initials at the top of the statement so that he would know that no one added anything to the statement between his initials and his signature at the bottom of the statement.
The next witness called by the State was Officer L. H. Clements who testified that he first saw appellant at Ritchey Grocery where he had been taken into custody prior to being transported to City Hall. This witness testified that he advised appellant of his rights and he said he understood his rights and he made a statement admitting that he had taken the pistol from the guard at Butrus Supermarket having walked in with a .22 pistol and disarming the guard. This witness further stated that appellant made the statement that the cashier or someone frightened him and he ran out of the store and fired two shots at the guard who had run out of the store behind him.
At the conclusion of the hearing on the motion to suppress the Court overruled the motion to suppress the identification of appellant and also held that his confession was voluntarily and knowingly made and would be read to the jury for whatever weight and credibility they wished to accord to it.
Back before the jury Mr. Bailey testified to substantially the same facts that he stated on the voir dire hearing. He was shown State’s Exhibit No. 1 and identified the pistol that appellant took from him in the robbery on April 6, 1975. He further testified that he went to a lineup and positively identified the appellant as the man who took his pistol at gunpoint.
The State called Officer L. H. Clements. The Court cautioned the prosecutor and this witness to avoid bringing up the fact that appellant was apprehended at the scene of another alleged robbery. Clements testified that on January 16,1975, he received a call to proceed to Ritchey’s Grocery and when he and his partner, Officer Bruce Jones, arrived, they saw appellant inside the store. They took appellant into custody and were given a .38 caliber revolver by Mr. Ritchey. Clements then stated that Sergeant Tommy White of the robbery detail made a preliminary investigation and they transported appellant to the robbery detail on the eighth floor at City Hall. Over objection of defense counsel this witness testified that after appellant was placed in the patrol car, he gave him his constitutional rights by reading from a Miranda card and appellant stated that he had taken the revolver from the guard at Butrus Supermarket. Appellant further made the statement that he had a .22 caliber pistol and after he took the pistol from the guard, a clerk threw a bottle and he ran out of the store and fired two shots at the guard. Prior to this statement being made the pre-Miranda predicate was properly laid showing no promises, threats, rewards or other inducements of any kind were made to get appellant to make a statement.
The next witness for the State was Officer Edward M. Cousins. He testified that on January 17, 1975, he saw appellant at the Birmingham City Jail. Appellant was placed in a lineup with six other black males as near his size as possible and he was viewed by Mr. James Bailey who positively identified him as number five in the lineup. He further said that two other people from Butrus Food Store viewed the lineup but could not identify appellant. Officer Cousins then testified that after advising appellant of his rights he made a statement which Officer Cousins wrote down and appellant signed. After the proper predicate was laid, this statement was admitted into evidence as State’s Exhibit No. 2. This witness admitted the first paragraph of this statement was in his words but the last paragraph was in the words of appellant. The statement is as follows:
“Victor K. Taylor BM 25 6564 Kimberly Ave.
“V.K.T.
“I Victor Taylor on my own free will and accord am making a statement concerning the robbery of Butrus Food Center at 4301 10th Ave. No. on 6 Jan. 75, at 6:30 P.M.
*1371 “I walked into store and walked up to the security guard and as I drew my pistol I grabbed the security guard pistol. A lady in the store threw a wine bottle at me. I then ran out of the store. The security guard started chasing me and I shot at him one time.
“Victor K. Taylor”
The State then recalled Officer Clements who testified that he turned the .38 caliber pistol over to the property clerk where it remained locked up until he brought it to Court. The pistol was admitted into evidence over appellant’s objection that it had not been properly identified.
Appellant made a motion to exclude the State’s evidence on the ground that a prima facie case had not been made and the gun had not been sufficiently identified. This motion was overruled and denied. Appellant requested the affirmative charge which was refused.
During the prosecutor’s closing argument defense counsel objected to the prosecution inferring that appellant had been arrested in another grocery store. This objection was overruled.
Defense counsel moved for a mistrial when the prosecutor told the jury that they could draw some inference from the fact that appellant had been picked up at another grocery store.
The Court overruled the motion for a mistrial stating “but I will instruct the jury that in arguing the case, the lawyers can draw inferences which they draw from the evidence; but stick strictly to the evidence in this case, Mr. Dunn.”
The prosecutor again stated, “What inference do you draw from the place he was caught ten days later?” An objection was interposed and overruled.
The prosecutor further said, “If you turn this man loose based on the evidence or you give him a minimum sentence two confessions, caught in a grocery store —” Another objection was interposed and overruled.
There was no attempt by the State to show that appellant committed another robbery at the time he was arrested. The trial court was extremely careful in limiting the State’s proof to the fact that appellant was arrested at a second grocery store where the pistol taken in the first robbery was recovered — that, and nothing more.
A wide latitude and liberal rules are allowed counsel in drawing inferences from the evidence in their arguments to the jury. Alexander v. State, 37 Ala.App. 533, 71 So.2d 520; Espey v. State, 270 Ala. 669, 120 So.2d 904; Haynes v. State, 40 Ala.App. 106, 109 So.2d 738; Beaird v. State, 219 Ala. 46, 121 So. 38.
In Wilkins v. State, 29 Ala.App. 349, 197 So. 75, the rule governing collateral offenses is stated to be:
“It is a well-established common-law rule that in a criminal prosecution proof which shows or tends to show that the accused is guilty of the commission of other crimes or offenses at other times, even though of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged unless the other offenses are connected with the offense for which he is on trial. In other words, proof of such collateral offenses cannot be used as substantive evidence to establish the guilt of the accused as to the crime charged. 20 Am.Jur., Section 309, pp. 287, 288. Wharton’s Criminal Evidence, 10th Ed., Volume 1, Section 30, p. 59. This well-established principle of criminal evidence, however, is subject to several, equally well-established exceptions, which include cases where intent or identity is involved. As found in 22 R.C.L., Section 39, p. 1204: ‘But this general rule is not to be followed blindly and evidence rejected on the sole ground that it does show the commission of another crime. If evidence is relevant and competent it should be admitted regardless of its incidental effect. Accordingly it is held that evidence of another crime is admissible where it tends to identify the accused.’ “And we also add that such evidence should also be admitted where it tends to *1372 show the intent with which the act was done. Or as stated in Underhill’s Criminal Evidence, 4th Ed., Section 181, p. 318: ‘To this general rule there are several distinct exceptions which have been permitted from absolute necessity, to aid in the detection and punishment of crime. These exceptions ought to be carefully limited and guarded by the courts and their number should not be increased. But it must be admitted that the modern tendency on the part of the courts is to be liberal in the admission of evidence of collateral crimes. The exceptions to the general rule arise either from the necessity of the case or the nature of the offense, as for example, * * * when the intent or motive is to be proved from the circumstances, or where the identity of the accused is expressly in issue.’ ” (Italics supplied.)
A confession may not be received in evidence until the prosecution shows to the satisfaction of the Court that such confession was voluntarily made. Womack v. State, 281 Ala. 499, 205 So.2d 579.
It has been further held that where evidence of the circumstances surrounding a confession is conflicting on voir dire, the trial court must decide on its admissibility and then, if the confession is admitted, controverted testimony for defendant goes to the jury on its credibility. Sheppard v. State, 49 Ala.App. 674, 275 So.2d 353; Bass v. State, 55 Ala.App. 5, 312 So.2d 576.
In McNair v. State, 50 Ala.App. 465, 280 So.2d 171, we find the rule stated to be:
“This Court has previously recognized the fact that it is not unusual for the volun-tariness inquiry to present conflicting evidence. Edgil v. State, 36 Ala.App. 379, 56 So.2d 677. When such a conflict occurs and the trial judge finds that the confession was voluntarily made, great weight must be given to his judgment. This finding will not be disturbed on appeal unless the appellate court is convinced that the conclusion is palpably contrary to the weight of the evidence. Emerson v. State, 281 Ala. 29, 198 So.2d 613, supra; Harris v. State, 280 Ala. 468, 195 So.2d 521; Edgil v. State, supra. Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. Minirth v. State, 40 Ala.App. 527, 117 So.2d 355, cert. denied, 270 Ala. 228, 117 So.2d 360.”
Appellant was given the Miranda rights and warnings on several occasions. The proper predicate was laid showing that the confession was not induced by threats, promises, harm, hope of favor or other inducements operating on the prisoner’s mind at the time he confessed. We hold the confession was properly admitted into evidence for the jury’s consideration. Lokos v. State, 278 Ala. 586, 179 So.2d 714; Sanders v. State, 278 Ala. 453, 179 So.2d 35.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur, except CATES, P. J., not sitting.