284 So.2d 289

Clarence **JACKSON**, Jr.

v.

**STATE.**

**7 Div. 242.**

Court of Criminal Appeals of Alabama.

Oct. 16, 1973.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

Burnham, Klinefelter, Halsey & Love and James Allen Main, Anniston, for appellant.

CATES, Presiding Judge.

Second degree murder: sentence, twenty years.

The deceased was one L. C. Nunnelly. His body was found in a roadway within the City of Anniston. The time of discovery was not shown with particularity. The coroner had received a call at 6:30 a. m., May 4, 1972. The body was at a "new traffic circle"—seemingly a dead end turnaround.

On the night of May 3, 1972 one James Strickland saw Jackson in a Buick at the Anniston City dump. Jackson poured gasoline in the car and, aided by Larry Feggans, set it afire. The Buick belonged to Nunnelly.

Feggans was driving his mother's car. A search thereof yielded (a) from the glove compartment, various papers of Nunnelly's including his driver's license and billfold and, (b) from the trunk, the battery from the Buick and a charred portion of a battery cable from it.

About 4 p. m., May 4, Jackson was interrogated at the Anniston Police Department by Detective Wayne Chandler. Detective Chandler had seen Nunnelly's body at the roundabout.

Cletus O. Behel, investigator attached to the District Attorney's office, was present as well as another city detective, Aaron Teague. However, according to Behel's testimony, Teague was outside the room.

Through Detective Chandler's testimony State's Exhibit 12 came into evidence. This reads:

"DATE: 5/4/72     TIME: 4 p. m.

PLACE: Anniston Police Dept

Statement of Clarence Jackson, Jr.

"I have been told I can remain silent, and I do not have to make a statement, and that anything I say may be used against me in a Court of Law.

"I have also been advised that I have a right to talk to a Lawyer and have him present while I am being questioned.

"I have also been advised that if I cannot afford to hire a Lawyer one will be appointed to represent me before any questioning, if I wish one.

"Witness:    x /s/ Clarence Jackson, Jr.

"/s/ Charles W. Chandler

"/s/ Cletus O. Behel

"_____

"After being advised of my rights, *I hereby voluntarily make the following statement on my own free will. I have not been threatened in any way and I have not been offered any hope of reward to cause me to make this statement.*

"/s/ Clarence Jackson, Jr.

"On Wednesday, May 3, 1972, I was on 15th Street sitting in a Cadillac across the street from Blairs Hotel. Willie Swain, Joseph Smith, Newell Williams, and John Montgomery, and myself were in the car. We all sat there talking and drinking wine until approximately 8 or 8:30 p̂. m. I got out of the car then and went down to the corner of 15th and Pine Avenue. Larry Feggans came by in his maroon 62 Chevrolet Impala. I stopped him. I asked him where he was going and he said riding around. I got into his car and we started riding. I went to sleep shortly after getting into the car. About 9:30 p. m. I woke up. I was at the city dump on a dirt road. Larry Feggans had stopped the car got out and slammed the door and that is what woke me up. Feggans went over and got into a brown Buick and was trying to get it up out of a hole or over a bump. He yelled for me to come and help him get the car out. I got in front of the buick and tried to push it out. I kept pushing until the tires started digging deeper into the ground.

"C.J.J.

"I got tired of messing with it and got back into the car. Feggans hollered for me to come and help him so I got back out and got into the Buick. I tried to drive the car out and it started sinking deeper and deeper into the hole. So I got out of it and when I did the motor went dead & it wouldn't crank again. Then Feggans and me got back into the Chevrolet and started to Mattie Mae Woods place just down the road. I changed my mind about going there and told Feggans to turn around. He did and started out. When we got back to the Buick Feggans stopped again and went over to the Bruck and tried to

crank it again and it wouldn't start. Then I got out and tried to crank the Buick. I opened the hood on the Buick, took the breather off, and tried to prime the carburetor. I told Larry Feggans to get some hose from his car and siphon some gas. He did and poured some of it into the carburetor. I got back into it and tried to start it and it still wouldn't start. I told Feggans to lets go. I got into the Chevrolet. I got mad because Feggans wouldn't come on so I got out and went over to the Buick & snatched Feggans back and the hood on the Buick hit him on his back and fingers. He said his back was hurt so he got into the car with me and drove to Anniston Memorial Hospital. It was approximately 11:30 or 12 p m then.

"I was shown a blue pull over sweater by Chief of Police Herman Dickerson which I was told was found where the car (Buick) was located. I identify that sweater as being mine.

"I had the above statement read to me by Detective Chandler of the Anniston P.D. and it is true and correct to the best of my knowledge.

"This statement consists of this and one other C.J. sheet and I gave it in the presence of Cletus O. Behel who was identified to me by Detective Chandler as an Investigator for the District Attorney, Otis MacMahon.

"X /s/ Clarence Jackson, Jr.

"/s/ Charles W. Chandler

"/s/ Cletus O. Behel."

(Italics supplied).

■ The *Miranda* warnings were given to Jackson. The pre-*Miranda* predicate was deficient in that the prosecution failed to ask Chandler, "Did you *or any one in your presence,* make any inducement, offer any reward or any type promise to get him to make a statement?" The italicized language was not used. We quote from

Stewart v. State, 231 Ala. 594, 165 So. 840:

"The predicate for the admission in evidence of the defendant's confession was not sufficient, in that it did not show that it was not brought about by threats or abuse made or inflicted by others than the witness Powell, or by reward or the hope thereof so offered or held out by persons other than the witness. * * *"

We hold that the signed preamble immediately following the acknowledgement of the *Miranda* warnings, as italicized above, is rebuttable evidence to aid in determining voluntariness.

Thus, in State v. Kilduff, 160 Iowa 388, 141 N.W. 962, we find:

" * * * The confession was made to the county attorney, in the presence of the sheriff and other officers, after her arrest, and it was afterwards written out by the county attorney, read to her, and signed by her. The statement itself, as signed, shows that it was made freely and voluntarily by her, without threats being used, or promises being made to her, of any kind. The testimony of the officers present supports this statement. * * *"

In Merrell v. State, 21 Ala.App. 38, 104 So. 881, Samford, J., wrote for the former Court of Appeals:

"The written statement of defendant in the nature of a confession included a statement that the statement was voluntary, and met the requirements of preliminary proof of its voluntary character. The statement was properly admitted."

■ A formal predicate is not an indispensable talisman of voluntariness. McElroy, Evidence (2d ed.) § 200.13(5). The voluntariness of a confession as a matter of law—aside from the *Miranda* questions—resolves itself into an enquiry into the totality of the ambient facts. Davis v. State, 44 Ala.App. 145, 204 So.2d 490.

" * * * in determining whether a statement by an accused is voluntary, a trial court is vested with a large discretion, and his conclusions in the premise will not be disturbed unless palpably wrong." Emerson v. State, 281 Ala. 29, 198 So.2d 613.

■ There was no error in admitting State's Exhibit 12.

■ Appellant's second point in argument relates to certain clothing of the appellant, some of which was exhibited before the jury. Some of these articles the prosecutor sua sponte withdrew from evidence. The appellant's trousers were excluded by the trial judge. We have carefully considered the testimony and the nature of the articles and conclude there was no prejudice to any substantial right of the appellant.

The judgment of the court below is hereby

Affirmed.

All the Judges concur.

