312 So.2d 576

**John D. BASS, alias**

**v.**

**STATE.**

**5 Div. 279.**

Court of Criminal Appeals of Alabama.

May 6, 1975.

Donald R. Adams, Auburn, for appellant.

William J. Baxley, Atty. Gen., and Carol Jean Smith, Asst. Atty. Gen., for the State.

HARRIS, Judge.

On September 2, 1974, Bell's Crossroads Grocery located three miles south of Loachapoka, Lee County, Alabama, was robbed by two black males both carrying .410 shotguns. One was a sawed-off shotgun. The store was owned and operated by Mr. Willie E. Bell and his wife. The time of the robbery was 7:30 P.M. A young boy, fourteen years of age, was employed by Mr. Bell and was in the store at the time. Mr. Bell had just placed four dollars on the counter with some change for the employee to use in waiting on customers and Mr. Bell walked over to a side door when the two robbers came in wearing nylon stockings—beige in color—over their faces. They were calling Mr. Bell and the young boy all kinds of obscene names and told them to hit the floor that, "this is a holdup."

Mr. Bell had been robbed before, and he had a .38 caliber pistol in his pocket. When the robbers said to hit the floor, Mr. Bell stepped backward toward an open door in the back of the store. He saw one of the robbers raise his shotgun and point it directly at him. When this happened, Mr. Bell fell to his left side behind the door casing. Just as he fell to the left a shotgun blast hit the door. Mr. Bell came out firing his pistol and shot and killed one of the robbers. The other robber ran out of the store.

In the meantime Mrs. Bell was in the restroom and upon hearing the shooting, she came in the store and got her pistol. She saw one black man lying on the floor and Mr. Bell told her to keep her gun on him saying, "I believe he is playing off, trying to pull a trick on us."

Mr. Bell called the Auburn Police Department and the Sheriff's Office in Opelika to report the robbery and to advise the officers that he had killed one of the robbers but the other one got away.

At appellant's trial both the fourteen-year-old employee and Mr. Bell testified they knew appellant and had known him for some years. The both of them identified him in court but testified they were unable to identify either of the robbers because they wore nylon stockings over their faces.

Mr. Jim Rothwein, a detective with the Auburn Police Department, was the first officer to arrive at the scene. He heard the robbery broadcast over his police radio between 7:30 and 8:00 P.M. and proceeded at once to the store for the purpose of "securing the scene". A county road intersects with Highway 11 about 20 feet from the store and he stationed himself at this intersection. He did not see anyone come out of the store.

Deputies from the Lee County Sheriff's Department and other police units soon arrived and entered the store. Shortly thereafter the coroner of Lee County arrived and searched the body of the dead robber for identification. He was identified as Larmar Gary.

About five minutes after Mr. Rothwein had stationed his patrol car at the intersection of the county road and Highway 11, a beige-colored Chevrolet station wagon drove up. The only occupant was a colored male. Mr. Rothwein stopped him and told him to get out and show him some identification. The man produced his driver's license and the name on the license was John D. Bass—appellant. While Mr. Rothwein was checking out this man, another officer came up and said he knew Mr. Bass and that he lived in the area. They

let Mr. Bass drive away. Mr. Rothwein patrolled the area about fifteen minutes longer and no other vehicles showed up. Mr. Rothwein identified appellant in court as the man he checked fifteen (15) to twenty (20) minutes after the robbery.

After learning that one of the robbers had escaped and that appellant was at the scene within 15 to 20 minutes after the robbery was committed an intensive investigation got underway by the Sheriff's Department of Lee County. Deputy Sheriff Ronnie Watkins was in charge of the investigation. He went to the store and observed the dead robber with a .410 shotgun under the body. He took charge of the shotgun and kept it exclusively in his possession until the trial. It was introduced in evidence over appellant's objections. Photographs of the exterior and interior of the store were made by Watkins. They were properly identified and introduced in evidence without objection. Also admitted in evidence was a live shell removed from the chamber of the shotgun.

Between 9:00 P.M. and 11:00 P.M. on September 4, 1974, Watkins took appellant into custody and orally advised him of his *Miranda* rights at that time, but he did not fully question him until the next day. On September 5, 1974, Watkins again advised appellant of his *Miranda* rights, and he learned that appellant had graduated from the twelfth grade. Appellant signed a form entitled "Waiver of Counsel by defendant in custody", as follows:

"SX # 6   10-14-74 WTB
Education: 12th Grade

"Date  9/5/74          TIME:  5:52 PM          PLACE:  Lee County
                                                                              Sheriff's Dept.
"WAIVER OF COUNSEL BY DEFENDANT IN CUSTODY

"I, John Daniel Bass, have been informed by the undersigned law enforcement officers, prior to being questioned by them, that I am suspected of the offense of Robbery in Lee County, Alabama, on the 2nd day of Sept., 1974, and have been informed by them of my Rights as follows:

"1.   That I may remain silent and do not have to make any statement at all.

"2.   That any statement which I might make may be used against me in Court.

"3.   That I have a right to consult with an attorney before making any statement and to have such attorney present with me while I am making a statement.

"4.   That if I do not have enough money to employ an attorney, I have the right to have one appointed by the Court to represent me; to consult with him before making any statement; and to have him present with me while I am making a statement.

"5.   That if I request an attorney, no questions will be asked me until an attorney is present to represent me.

"After having my Rights explained to me, I freely and voluntarily waive my right to an attorney. I am willing to make a statement to the officers. I can read and write the English language and fully understand my Rights to an attorney. I have read this Waiver of Counsel and fully understand it. No threats or promises have been made to me to induce me to sign this Waiver of Counsel and to make a statement to the officers.

"This 5th day of September, 1974.
"/s/ John D. Bass

"All of the Rights in the above Waiver of Counsel were read and explained to the above defendant by me and he freely and voluntarily waived his right to an attorney. No threats, promises, tricks, or persuasion were employed by me or anyone in my presence to induce him to waive his rights to an attorney and to make a statement without an attorney. He freely and voluntarily signed the above Waiver of Counsel in my presence after having read it.

"/s/ Ronnie Watkins
    Lieutenant
    (title)  9/5/74    6:00 P.M.
"Witnessed by:
 /s/ Inv. Paul Dennis
     9-5-74"

---

Appellant then made an oral statement to Watkins which was written by Watkins. It consists of three pages. This statement was read back to appellant, and he was allowed to read it himself. He initialed the first two pages and signed his name to the third page which signature was witnessed by Watkins and Paul Dennis. The statement is as follows:

"STATEMENT OF DEFENDANT IN CUSTODY, PAGE 1
LEE COUNTY SHERIFF'S DEPARTMENT
Opelika, Alabama

"Statement of John Daniel Bass
 Time:  6:25 PM          Date  9/4  1974
 Place  Lee County Sheriff's Dept.

"My name is John Daniel Bass  age 27  DOB 8/4/47  I am making a voluntary statement to Lieutenant Ronnie Watkins whom I know to be deputy sheriff for Lee County, Alabama about The Robbery of Bell's Cross Roads Grocery in Lee County. This statement is of my free-will, without any threats, promises or duress having been made toward me. I have been advised by Lieutenant Ronnie Watkins that I don't have to make a statement and that I may have legal counsel.

"Sometime around 6:00 PM on Labor Day September 2nd, 1974 I was riding around with Tommy Blount in my 1964 Chevrolet stationwagon in Auburn, Alabama. We past Lamar Gary at the 'Duck Inn' and he flagged us down and got in the car. Tommy and Lamar said that they wanted to rob Bell's Crossroads Grocery and they wanted me to drive them down there. I took them over to the 'backline' next to where the old school use to be and they got out of the car and came back with two .410 shotguns. Tommy had a sawed off shotgun that I had given him about a month ago and Lamar had a single barrell (sic). JDB  RLW  PTD

"LEE COUNTY SHERIFF'S DEPARTMENT    WITNESS STATEMENTS
 Statement of JOHN DANIEL BASS              Page  2
 Date  9/4    1974

"We then drove over to Lamar's house and Tommy got out and came back with some stockings. We then drove down to Bell's store and put Lamar and Tommy

out on the dirt road behind the store. They had the guns and told me to pick them up on the side of the road later, if I saw them.

"I road (sic) around the store and the first time I past it, about twenty minutes after I put them out, I saw a patrol car in front of the store. I drove on up Lee County #11 and alot of patrol cars pasted (sic) me. I went back down to the store and started back up #11 and a detective stopped me and Don Thrash told him to let me go that I was alright. I started on up #11 and I heared (sic) Tommy call me and he came out of the woods and got in the car. He didn't have a gun with him, and he didn't know where Lamar was. He told me he had to shoot but he didn't know where Lamar was that he thought he was behind JDB RLW PTD

"LEE COUNTY SHERIFF'S DEPARTMENT     WITNESS STATEMENTS
Statement of _____     Page 3
Date _____ 19___ .
"him.
"I took Tommy to his house at Molton Apts. in Auburn and he changed clothes. We had trouble with my car and Tommy burned some paper to give me some light to see how to check the battery connections. I took Tommy up to the phone booth and let him call his girlfriend and took him back home.

"I went on to work at the Mill at 11:00 PM and heard some people talking about someone getting shot and that was the first that I knew that Lamar had been hurt.

"I have read this statement consisting of three pages initialed all pages and corrections and it is true correct and voluntary to the best of my knowledge. JDB

"/s/ John D. Bass

"/s/ Ronnie Watkins          /s/ Paul Dennis
     Lieutenant                    Investigator
     9/5/74                        9–5–74
     7:13 PM                       7:13 P.M."

---

Considerable testimony was had out of the presence and hearing of the jury on the question of the voluntary character of the confession. At the conclusion of the hearing, the trial court ruled the confession was voluntary and after proper predicates were laid, the confession was admitted in evidence.

It is to be noted that the Waiver of Counsel form is dated 9–5–74, and at the top of the first two pages of the confession the date 9–4–74 appears. When these dates were pointed out to Watkins on voir dire, he testified:

"I acquired the statement on September 5th, 9–5–74. If the date's in error at the top of the page, it would be in error on my part. In the dating, I do know on the last page, the third page of the statement, that I made the same mistake when I signed my signature, but I see that I have made a correction on that but I failed to correct the top of statement but the statement was obtained on the 5th."

In testifying about these dates before the jury Watkins said:

"Q. Deputy Watkins, I call your attention to the top of the page on Pages One, Two and Three, where it indicates the date to be September the 4th, 1974.

How do you account for differences in the date?

"A. It's an error on my part. I had worked the entire day before, all through that night and the preceding day, only to go home and change clothes and shave. So, to me, it was almost the same day so it was an error on my part where it bears the date 9–4–74, it should be 9–5–74, when I acquired the statement.

"Q. I noticed that the signature of Paul Dennis, investigator, and that your signature, Ronnie Watkins, Lieutenant, is dated 9–5–74. Is that the true and correct date that the statement was obtained from this defendant?

"A. It is, yes, sir.

"Q. I notice that it appears under your signature that someone has attempted to change the date on 9–5–74. Do you know who, if anyone, attempted to change that date?

"A. Yes, sir, I did.

"Q. And why did you change that date?

"A. This was the only place where I caught myself in error when I was supplying the date 9–4–74. I realized it here and at that point I fixed 9–5–74, but failed to change the top of the preceding three pages."

Appellant testified in his behalf and denied that he participated in the robbery. He admitted that while he was riding Blount and Gary around, that they intended to rob the Bell's Crossroads Grocery, but that he had nothing to do with the plan to rob. As a matter of fact he said he advised against robbing the store.

Title 14, Section 14, Code of Alabama 1940, provides:

"The distinction between an accessory before the fact and a principal, between principals in the first and second degree, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must hereafter be indicted, tried, and punished as principals, as in the case of misdemeanors."

■ The law is settled that when by pre-arrangement or on the spur of the moment, two or more persons enter upon a common enterprise or adventure and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out, each is guilty of the offense committed, whether he did any overt act or not. The community of purpose need not be proved by positive testimony. The jury is to determine whether it exists, and the extent of it, from the conduct of the parties and all the testimony in the case. Stokley v. State, 254 Ala. 534, 49 So.2d 284.

■ All persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, must be indicted, tried and punished as principals. Mitchell v. State, 51 Ala.App. 411, 286 So.2d 85.

■ The participation in a crime and the community of purpose of the perpetrators need not be proved by direct or positive testimony, but may be inferred from circumstantial evidence. Parsons v. State, 33 Ala.App. 309, 33 So.2d 165.

■ The question of whether or not appellant, acting as the chauffeur for his associates, was thereby an aider or abettor—a derivative principal under the above quoted Code section—in the crime of robbery committed by them out of his presence was for the jury. Brown v. State, 39 Ala.App. 149, 96 So.2d 197.

Appellant knew Mr. Bell as he had been in his store on many occasions and traded with him. He knew he could not go in this store with the other two blacks as he might be recognized. He knew that a robbery was contemplated when he drove his

car within a few hundred yards of the store and let the other two men out. The jury could by fair inference conclude that when appellant drove his care within twenty feet of the store fifteen (15) to twenty (20) minutes after he let the robbers out it was his purpose to pick them up after the robbery and carry them from the scene of the crime. By appellant's own admission he did pick up Blount a short distance from the store and carry him to his apartment in Auburn after the crime was committed.

 A confession may be admitted in evidence upon a proper showing by the state that the confession was made voluntarily and with full knowledge and understanding of the waiver of the defendant's right to have an attorney present and of his privilege against self-incrimination. Jones v. State, 292 Ala. 126, 290 So.2d 165.

■ If from a review of the surrounding circumstances it appears that an extra-judicial confession has not been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor, then such confession is admissible as evidence. Guenther v. State, 282 Ala. 620, 213 So.2d 679.

■ Where the trial court finds on conflicting testimony that a confession was voluntarily made such finding will not be disturbed on appeal unless the appellate court is convinced that it is palpably contrary to the weight of the evidence. Mc-Nair v. State, 50 Ala.App. 465, 280 So.2d 171; Floks v. State, 49 Ala.App. 101, 268 So.2d 881; Luschen v. State, 51 Ala.App. 255, 284 So.2d 283; Jackson v. State, 51 Ala.App. 263, 284 So.2d 289.

Prior to arraignment appellant was found to be indigent and counsel was appointed to represent him throughout all the trial proceedings in the court below. He pleaded not guilty. After conviction he was furnished a free transcript and trial counsel was appointed to represent him on appeal.

The jury returned a verdict of guilty and fixed his punishment at twenty years in the penitentiary. He gave notice of appeal at the time he was sentenced. The court fixed bond at $40,000.00 but subsequently reduced it to $30,000.00. Appellant made bond and is free pending appeal.

We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.

Affirmed.

All the Judges concur.