G. H. WRIGHT, Jr., Circuit Judge.
The appellants Clarence Miller and Charles Moore were separately indicted by the Grand Jury of Coffee County, Alabama, for committing a crime against nature (sodomy). By agreement of the appellants, they were tried together and the jury found each guilty as charged in the indictments and the Court sentenced each of them to nine (9) years imprisonment.
The appellants were ably represented by court appointed counsel throughout the proceedings in the trial court and at the time sentence was pronounced and judgment entered. They are now represented here by other court appointed counsel.
On October 2, 1975, one Wayne Jackson was a prisoner in the Coffee County jail in Elba. After dinner on that day, Jackson was in the portion of the jail known as the “bull pen” with the appellants and other prisoners.
Jackson had been convicted shortly before of Grand Larceny and as he, the appellants, and other prisoners were in the bull pen, Jackson’s girl friend who had just been sentenced to three (3) years for her participation in the crime for which Jackson had been convicted passed by the cell and expressed her feelings towards him including her hope that he got a thousand years. Appellants and the other prisoners apparently shared her feelings towards Jackson *1361 and trouble thereafter ensued between Jackson, the appellants, and the other prisoners.
Jackson testified that appellant Moore tripped him causing him to fall and break his arm. Another of the prisoners by the name of Benjamin Bowers began beating on Jackson. After Bowers had struck Jackson five or six times, Jackson testified that the appellants made him strip and both of the appellants beat him with a belt, kicked him, and stomped on him. As a result of all of this, Jackson testified that he received a broken arm, his eye was cut, his lip busted, and his ear was injured.
After this, Jackson testified that appellant Moore took him back into one of the cells and made Jackson take appellant Moore’s penis into his mouth. Appellant Miller then told Jackson to take a shower after which Miller made Jackson take Miller’s penis into his mouth also. Afterwards, the appellants tied a cord around Jackson’s neck and choked him. Appellant Moore told Jackson that if he testified against them, they would have him killed or they would do it themselves. Jackson was treated for his injuries at the Elba Hospital that night and when being brought back to jail from the hospital, he made a complaint to Deputy Don Rayford about what had occurred.
Both appellants testified in their own behalf and admitted striking Jackson. However, they both denied that they had Jackson take their penises into his mouth.
On October 6, 1975, Sgt. J. R. Cox, of the Alabama Bureau of Investigation talked with appellant Moore at the Pike County jail in Troy. Deputy Rayford was present at the time. After Cox fully informed appellant Moore of his Miranda rights, he asked him what he knew about the incident at the Coffee County jail on October 2, 1975. Appellant Moore told Sgt. Cox that he had received a fifty-five (55) year sentence previously as a result of a statement that he had given without an attorney and that he was not going to make any statement or sign anything without an attorney. Sgt. Cox then immediately ceased questioning Moore.
Sheriff Neil Grantham, Sheriff of Coffee County, picked up appellant Moore on October 13,1975, at the Pike County jail in Troy for the purpose of taking him to the Coffee County jail in Elba. During the trip to Elba, the Sheriff and Moore engaged in a conversation and the Sheriff asked Moore if he wanted to tell him about the incident at the jail. The Sheriff told Moore, “you don’t have to say anything, you know that”, and Moore replied, “yes, I know it.” Appellant Moore then told the Sheriff he didn’t know anything about it. However, after arriving at the Coffee County jail and prior to going into the jail, Moore made a statement to the Sheriff. As to what occurred upon their arrival at the jail, a part of the Sheriff’s testimony is as follows:
“So we more or so just talked about everything until we got to the jail, in front of the jail. I said, ‘Chárles, you don’t want to get this off your conscience?’ I said, “What was bothering you in Troy?’ He said, “Well, I was just homesick, just wanted to get back down here.’ I said, ‘Well, do you want to talk to me about it?’ And, he went on voluntarily and made a statement to me.”
The Sheriff testified that prior to that time, he had not threatened appellant Moore, abused him, or offered him any hope of reward or any inducement to' get him to make a statement.
The record does not disclose what statement the appellant Moore made to the Sheriff at that time.
Appellant Moore’s version of what was said between he and the Sheriff upon arrival at the jail reads from the record as follows:
“A. He told me do I want to talk to him about jumping on Wayne Jackson. I told him I didn’t know nothing. So we got started talking. So we got to the Elba jail down here and he told me he was going to put me in one of those little old padded cells down there. I told him I wanted to go back upstairs. So he said, *1362 ‘No, I would rather for you to stay down here tonight.’ I said, ‘Well, I’ll talk to you.’ So he took me out of the car and me and him talked. He threatened me.
Q. What do you mean by threatened you?
A. He told me that if I didn’t sign that statement that there was something going to happen to me.
Q. Did he indicate to you what was going to happen?
A. No, he never did tell me.”
What statement, if any, the Sheriff wanted appellant Moore to sign at that time is not disclosed by the record.
The following afternoon, October 14, 1975, Sgt. Cox went to the Coffee County jail in response to a telephone call from Sheriff Grantham and took a written statement from appellant Moore which was introduced into evidence. Sgt. Cox, Sheriff Grantham and appellant Moore were present at the time this statement was taken. Prior to taking this statement from the Defendant, Sgt. Cox fully advised the Defendant of all of his constitutional rights and appellant Moore signed a written waiver of counsel form which was introduced into evidence. Sgt. Cox testified that neither he nor Sheriff Grantham threatened Moore or offered him any reward or hope of reward or any other inducement to get him to make a statement. Appellant Moore then made a statement to Sgt. Cox which was reduced to writing, read back to Moore by Sgt. Cox, and then signed by Moore. In his statement, Moore admitted beating Jackson and making Jackson take his penis into his mouth. He further stated in his statement, however, that he did not know whether or not appellant Miller made Jackson take Miller’s penis into his mouth.
Appellants contend that the Court committed reversible error in allowing appellant Moore’s statement to be introduced into evidence in that the statement was the sole product of trickery on the part of Sheriff Grantham and that the taking of this statement did not meet the constitutional requirements set out in the ease of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
It should be noted at this point that at the time of the taking of this statement, appellant Moore was 29 years of age, had a third grade education, and could not read but could sign his own name. His previous convictions for burglary and murder indicate that he is familiar with the law and court proceedings.
A confession may be admitted in evidence upon a proper showing by the state that the confession was made voluntarily and with full knowledge and understanding of the waiver of the defendant’s right to have an attorney present and of his privilege against self-incrimination. Bass v. State, 55 Ala.App. 5, 312 So.2d 576.
Appellant Moore was fully advised of his Miranda rights by Sgt. Cox at Troy on October 6, 1975. His reply at that time to Sgt. Cox in declining to make a statement without an attorney present shows that he fully understood his rights. Although Moore declined to answer questions at that time without an attorney present, the Miranda decision does not, in absence of a request for counsel, mandate the presence of counsel before questioning may be resumed. Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).
Appellant Moore was next questioned seven days later by Sheriff Grant-ham while Moore was being taken to Elba. Whether the Miranda warning should be given before each interrogation must depend upon the circumstances of each case. The length of time and the events which occur between interrogations are relevant matters to consider. Jones v. State, 47 Ala.App. 568, 258 So.2d 910. In the present case, appellant Moore was fully advised of his rights on October 6th which he clearly understood, he was not questioned further until his conversation with Sheriff Grant-ham on October 13th and, although not given a full Miranda warning by the Sheriff, he was again reminded of his right to remain silent.
*1363 The statement made by appellant Moore to the Sheriff on October 13th, whatever it might have been, was made voluntarily according to the Sheriff’s testimony. Appellant Moore testified to the contrary and claimed he was threatened. Where the trial court finds on conflicting testimony that a confession was voluntarily made such finding will not be disturbed on appeal unless the appellate court is convinced that it is palpably contrary to the weight of the evidence. Bass v. State, supra.
Before taking appellant Moore’s written statement the following day, October 14, 1975, which was introduced into evidence, Sgt. Cox again fully explained to the appellant his Miranda rights. Appellant stated that he understood his rights, signed a waiver of counsel form, gave his statement which Sgt. Cox reduced to writing, and signed the statement after having it read to him by Sgt. Cox. There is no evidence whatsoever that any threats were made against appellant Moore at the time nor was he offered any inducement, reward, or hope of reward to get him to make and sign the statement.
It is the totality of the circumstances which determines an effective waiver of one’s constitutional rights. Gamble v. State, 48 Ala.App. 605, 266 So.2d 817. Under the circumstances here, we hold that appellant Moore voluntarily and understandingly waived his constitutional right to remain silent and that the Trial Judge properly admitted the statement into evidence.
The appellants next contend that the trial court committed reversible error in allowing Wayne Jackson, the victim, to testify about certain injuries he received from being beaten by the appellants and other prisoners in the Coffee County jail prior to and subsequent to the alleged acts of sodomy. During the direct examination of the victim by the District Attorney, the following occurred:
“Q. Let me ask you this, without saying anything about what any doctor told you or anything what consisted of the injuries that you sustained, Wayne?”
Appellant objected to this question on the grounds that it was not a part of the res gestae and on the additional ground that whether or not force was used in this case was immaterial to the charge against the Defendants. The Court overruled the objection, but before the question could be answered the District Attorney propounded the following additional question:
“Q. What all was wrong with you specifically? Not what somebody told you, but what you know was wrong with you.”
Appellant then injected the further ground for objection that parties other than the appellants were responsible for at least some or all of the victim’s injuries. Appellant’s objection was again overruled and the victim answered as follows:
“A. Well, my eye was cut up here, my lip was busted through and through and then my ear I couldn’t hear out of it. I believe this ear here because it was all swollen up. My arm was broken. Other than that is all I know was really wrong with me at the time until I did see a doctor later on.”
Prior to this questioning, the victim had already testified extensively, without objection, as to the injuries he had received. “Charles Moore, he, tripped me and I fell. That is when I broke my arm.” (R.p.10) “I had a towel and I was trying to get my mouth to quit bleeding. My lip was busted and my eye.” (R.p.12) “So Neil he come up there and he looked at me and he told them to unlock the door and let him carry me to the doctor. So Neil Grantham carried me over to the Elba hospital that night, and they treated me over at the hospital — .” (R.p.13) This last statement by the victim about being carried to the doctor and the hospital was objected to by appellants but the objection came too late.
It is not error to allow a witness to relate facts, over objection, which have already *1364 been related without objection. Oatsvall v. State, Ala.Cr.App., 327 So.2d 735 (1975). See also Purser v. State, 39 Ala.App. 169, 96 So.2d 689, and cases cited therein. Therefore, this testimony by the victim concerning his injuries was properly admitted into evidence.
We have reviewed the entire record in this case as required by law and conclude that the appellants received a fair trial, free of error.
The foregoing opinion was prepared by Hon. G. H. WRIGHT, Jr., Circuit Judge, temporarily on duty on the Court pursuant to subsection (4) of Section 38, Title 13, Code 1940, as amended; the Court has adopted his opinion as its own.
The judgment below is hereby
Affirmed.
All the Judges concur except CATES, P. J., not sitting.