Dwight David Marshall was convicted of the capital offense of murder during a kidnapping, as defined in Ala. Code 1975, §13A-5-40(a)(1). He was sentenced to imprisonment for life without parole. He raises three issues on this appeal from that conviction.
 I.
The appellant contends that he was denied his constitutional right to the effective assistance of counsel because his trial counsel failed to object to the admission of evidence of the appellant's prior conviction for "auto theft." Although the issue of ineffective assistance was raised in the appellant's motion for new trial, this particular claim was not a ground of that motion. "The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial." Ex parteFrith, 526 So.2d 880, 882 (Ala. 1987).
Furthermore, the prior conviction for theft of an automobile was injected into the trial by defense counsel on direct examination of the appellant, apparently in an attempt to lessen the significance of the prosecutor's anticipated impeachment of the appellant by the use of this prior conviction. "Larceny (now known in our Code as theft), petit or grand, is a crime of moral turpitude and a conviction of larceny may be used for impeachment purposes." Ex parteBankhead, 585 So.2d 112, 122 (Ala. 1991). "Strategic choices made after a thorough investigation of relevant law and facts are virtually unchallengeable and those strategic decisions made after less than complete investigation are 'reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.' Strickland [v.Washington, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066,80 L.Ed.2d 674 (1984)]." Ex parte Lawley, 512 So.2d 1370, 1372-73
(Ala. 1987).
Moreover, defense counsel did file a pretrial "motion in limine to prohibit introduction of evidence of other crimes, bad character." C.R. 61-63.
In connection with his argument on counsel's alleged ineffectiveness, the appellant complains that "trial counsel's failure to object to the admission [of evidence of his prior conviction]" at the guilt phase and at the sentencing phase resulted in "an 'overlapping of aggravat[ing] circumstances' depriving the Appellant of an 'individualized sentencing proceeding.' " Appellant's brief at 14-15. We find no merit to that contention. As noted in Part III, the trial court instructed the jury at the sentencing phase that the appellant's prior conviction for auto theft was not "an aggravating circumstance."
 II.
The appellant testified at trial and argues on appeal that his confession was coerced. However, the State presented evidence that the appellant knowingly, intelligently, and voluntarily waived his Miranda[1] rights before he made his confession to the police. The rule is that "[w]hen there is *Page 768 
conflicting evidence of the circumstances surrounding an incriminating statement or a confession, it is the duty of the trial judge to determine its admissibility, and if the trial judge decides it is admissible his decision will not be disturbed on appeal 'unless found to be manifestly contrary to the weight of the evidence.' " Ex parte Matthews, 601 So.2d 52,53 (Ala.), cert. denied, ___ U.S. ___, 112 S.Ct. 2996,120 L.Ed.2d 872 (1992).
The appellant was questioned by Birmingham Police Officer Ivory Dotson and Lieutenant Marvin Walker. Although Walker did not testify, Dotson's testimony was sufficient to establish the proper voluntariness predicate. Dotson's testimony indicates that Walker did not talk to the appellant when Dotson was not present. R. 740, 744. "The defendant's argument that the State failed to lay the proper predicate for the admission of his confession into evidence is not supported by the record. Time and time again the words 'or anyone in your presence' were included in the predicate-laying questions." Knighten v. State,402 So.2d 363 (Ala.Cr.App. 1981). See also Jackson v. State,51 Ala. App. 263, 266, 284 So.2d 289 (1973). "Including the words 'or anyone in your presence' in the predicate-laying question is essential if it appears that a person other than the accused and the witness was present when the confession was made." C. Gamble, McElroy's Alabama Evidence, § 200.02(3) (4th ed. 1991).
In connection with this issue, the appellant asserts that the trial court failed to make written findings of facts in connection with the determination of the admissibility of a statement or confession. We know of no requirement that the trial court make such written findings.
 III.
Contrary to the appellant's argument on appeal, the trial court did instruct the jury at the sentence phase of the trial that the appellant's prior conviction for auto theft "is not an aggravating circumstance." R. 1179.
 IV.
The evidence is sufficient to support the appellant's conviction for the commission of an intentional murder during the course of a kidnapping.
The appellant, in his statement to the police, admitted that he shot the victim. Clearly, the state presented a prima facie case of murder. The question in this case is whether the state presented a prima facie case of murder during a kidnapping inthe first degree. At the outset, we note that there was never any testimony that any physical show of force was ever employed against the victim, that any weapons were displayed in his presence, that the victim was ever threatened, or that the victim was forced to do anything.
The State's evidence established that the appellant was a drug dealer and that the victim, Darryl Wayne Langham, worked as a driver for the appellant in Huntsville, Alabama. Langham also did "[d]rop offs [of drugs] and pick ups [of money]." R. 459. Langham was arrested during the early part of February 1990 in connection with drug activity. Approximately two months after Langham's arrest, the appellant moved to Birmingham, where he continued his drug operation. While in Birmingham, the appellant stayed at the residence of a friend, Craig Smith, on Cleveland Avenue.
In February 1991, after his release from jail, Langham came to Birmingham via bus, apparently at the appellant's request. It appears that his bus ticket was purchased by the appellant. Langham was met at the bus station by Craig Smith and was taken to a residence in Cooper Green from which the appellant was selling drugs. Marvin Goodwin, Leon Latham, Billy Latham, and a person identified only as "Mooney" were also staying at that same residence.
There was evidence that the appellant knew that Langham was "working for the narcs." R. 482. Two days after Langham arrived in Birmingham, the appellant met with Langham and others at the Cooper Green residence. At that time, the appellant told Langham that he "ought to" kill him because he was a police informant. Monika Boston, the appellant's "girlfriend," testified *Page 769 
that the appellant "started saying he didn't want to kill him because he worked too hard for him and he was a good worker." R. 487. She testified that Langham responded, "I told you I'm not here to mess over anybody. All I want to do is go home and get my money and you [the appellant] can go with me or somebody can go with me." R. 487-88. There was testimony that Langham "wanted to go home — he wasn't here to mess over anybody. He wanted to go home and get his money." R. 597. At this time Langham was "shakey" and "nervous." R. 597.
Craig Smith testified that Langham "wanted to go back home," but that there "really wasn't nothing said concerning that." R. 620, 621. The appellant did indicate that he did not want Langham to return to Huntsville. Smith testified that the appellant "basically" but not "specifically" communicated this to Langham: "[W]ell, [the appellant] was sitting there he — stated that he ought to kill him but he wouldn't. . . . Because he was a police informant he couldn't trust him. Basically just talk about [sic]." R. 624-25. Smith testified that the appellant stated that he "ought" to kill Langham but that he would not. R. 666. Smith stated that Langham responded by stating that "I told him [appellant] all I can tell him. I'm not going to turn him in." R. 626.
Billy Latham testified that, on this same occasion, the appellant "was talking about some guy, killing him because he thought he was a snitch." R. 676. Langham "[a]t first . . . paused a moment and said he ain't no snitch, if you don't believe me take me home and I can get all my clothes." The appellant responded "Okay." R. 676.
After the appellant told Langham that he "ought to" kill him, Goodwin and the appellant went into another room and talked. When they came out, they told Langham that "they was going to take him to Huntsville." R. 626. The appellant drove a Buick Regal automobile in which Langham rode in the back seat with Billy Latham. Goodwin rode in the front seat. Ms. Boston and Craig Smith drove a Suzuki vehicle and followed the appellant. There was testimony that Langham went to sleep during the trip, and also that he stated that when he got home he would get his cassette music tapes.
The two vehicles headed toward Huntsville on the interstate. After driving for awhile the two vehicles stopped at the Last Chance Stop gas station. During this stop, Goodwin and Langham remained in the car. The vehicles left the station and headed back toward Birmingham when two Fultondale police cars pulled in the gas station. At some point, the vehicles stopped and the appellant stated, "We are going to drop this mother fucker right here," or "I ought to pop this nigger." R. 500, 633. However, when Smith indicated that there was a neighborhood nearby, the appellant headed toward Bessemer, stopping only when he reached the trash dump in Lipscomb. Then the appellant, Goodwin, and Langham got out of the Buick Regal and walked into the woods. Latham testified that the appellant "told the victim to get and see if he is telling the truth [sic]." R. 682.
Langham was executed by being shot at least eight times with two different pistols. In his statement to the police and in a comment to Ms. Boston, the appellant admitted shooting Langham. Ms. Boston testified that the appellant stated, "I took you all with me tonight so you could be [accessories] to this fact . . . [and] to show what happens to you if you ever cross me." R. 542.
There was evidence that several days after the execution, Goodwin and Leon Latham returned to the scene and dismembered Langham's body, removing Langham's right hand and both feet. Goodwin and Latham returned these body parts to Craig Smith's residence where, several days later, the appellant burned the body parts in a barbecue pit. Afterwards, the appellant threw some of the bones to the dogs next door and buried the hand, which would not burn.
What remained of Langham's decomposed body was discovered on March 9, 1991.
"A person commits the crime of kidnapping in the first degree if he abducts another person with intent to . . . [a]ccomplish or aid the commission of any felony . . . [or] [i]nflict physical injury upon him." Ala. Code 1975, § 13A-6-43(a)(3) and (4). The term "abduct" *Page 770 
means: "To restrain a person with intent to prevent his liberation by either: a, Secreting or holding him in a place where he is not likely to be found, or b. Using or threatening to use deadly physical force." Ala. Code 1975, § 13A-6-40(2). "Restraint" means: "To intentionally or knowingly restrict a person's movements unlawfully and without consent, so as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved. Restraint is 'without consent' if it is accomplished by [p]hysical force, intimidation or deception." § 13A-6-40(1)(a) (emphasis added).
The proof of the kidnapping in this case consists of evidence that the appellant lured Langham into an automobile and took him on a "ride" under the pretense of taking Langham to Huntsville. "It should be emphasized that kidnapping, like false imprisonment, is not defined in terms of confinementwithout consent, but unlawful confinement. And confinement under a fraudulently-induced consent is unlawful." R. Perkins 
R. Boyce, Criminal Law 236 (3d ed. 1982). " 'The dominating element of the offense of kidnapping, . . . is the intent with which the acts enumerated in the statute are done.' " Musgrovev. State, 519 So.2d 565, 581 (Ala.Cr.App.), affirmed,519 So.2d 586 (Ala. 1986), cert. denied, 486 U.S. 1036, 108 S.Ct. 2024,100 L.Ed.2d 611 (1988).
"In determining the sufficiency of the evidence to sustain the conviction, this court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution." Faircloth v. State,471 So.2d 485, 489 (Ala.Cr.App. 1984), affirmed, 471 So.2d 493
(Ala. 1985). " 'The role of appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury.' Bankston v. State, 358 So.2d 1040, 1042
(Ala. 1978) (emphasis in original)." White v. State,546 So.2d 1014, 1022 (Ala.Cr.App. 1989).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).